**LEWIS RICE LLC**
Michael J. Hickey, applying *Pro Hac Vice*
mhickey@lewisrice.com
Philip J. Mackey, applying *Pro Hac Vice*
pmackey@lewisrice.com
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
(314) 444-7630
(314) 612-7630 (fax)

**KEESAL, YOUNG & LOGAN**
Ben Suter, CASB No. 107680
ben.suter@kyl.com
Stacey M. Garrett, CASB No. 155319
stacey.garrett@kyl.com
A Professional Corporation
400 Oceangate, Suite 1400
Long Beach, California 90802
(562) 436-2000
(562) 436-7416 (fax)

*Attorneys for Defendant Build-A-Bear
Workshop, Inc.*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY TOYS HOLDINGS, LLC; JAZWARES, LLC; KELLY AMUSEMENT HOLDINGS, LLC; and JAZPLUS, LLC,<br><br>                    Plaintiffs,<br><br>vs.<br><br>BUILD-A-BEAR WORKSHOP, INC.,<br><br>                    Defendant. | Case No. 2:24-cv-01169-JLS-MAR<br><br>**BUILD-A-BEAR WORKSHOP, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER FRCP 12(b)(6)**<br><br>Date:     May 10, 2024<br>Time:    10:30 a.m.<br>Place:    Honorable Josephine L. Staton<br>            Courtroom 8A |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant Build-A-Bear Workshop, Inc. ("Build-A-Bear") respectfully moves to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion is made on grounds that Plaintiffs have failed to: (1) plausibly articulate protectable trade dress; (2) confirm

- 1 -

whether Plaintiffs have supplied deposit copy images of their alleged copyright registrations; and (3) properly present a standing basis for all Plaintiffs to bring their copyright infringement claim.  Build-A-Bear reserves its rights regarding all other defenses.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 on February 27, 2024, as well as subsequent e-mail correspondence.  *See* Declaration of Michael J. Hickey ("Decl."), ¶¶3-4.  This Motion is based on the points and authorities raised herein, the accompanying Request for Judicial Notice and Exhibits attached thereto, the accompanying Proposed Order, all pleadings on file in this action, and such matters of which this Court may take judicial notice.

DATED: March 5, 2024

**KEESAL, YOUNG & LOGAN**

By:  */s/ Stacey M. Garrett*

Ben Suter, CASB No. 107680
ben.suter@kyl.com
Stacey M. Garrett, CASB No. 155319
stacey.garrett@kyl.com
A Professional Corporation
400 Oceangate, Suite 1400
Long Beach, California 90802
(562) 436-2000
(562) 436-7416 (fax)

**LEWIS RICE LLC**
Michael J. Hickey, applying *Pro Hac Vice*
mhickey@lewisrice.com
Philip J. Mackey, applying *Pro Hac Vice*
pmackey@lewisrice.com
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
(314) 444-7630
(314) 612-7630 (fax)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................4

I.      INTRODUCTION ....................................................................................7

II.     APPLICABLE LAW ............................................................................11

        A.      Rule 12(b)(6) ...........................................................................11

        B.      Trade Dress ..............................................................................11

III.    BACKGROUND ...................................................................................13

        A.      The Squishmallows Products ...................................................13

        B.      Build-A-Bear and its SKOOSHERZ™ plush toys .............24

IV.     ARGUMENT .........................................................................................26

        A.      This Court Should Dismiss Plaintiffs' Trade Dress Claims (Including Plaintiffs' Unfair Competition Claims Based on Trade Dress) Because Plaintiffs Do Not and Cannot Clearly and Adequately Describe the Claimed Squishmallows Trade Dress in Order to Provide Build-A-Bear with Sufficient Notice. .....................26

        B.      This Court Should Dismiss Plaintiffs' Trade Dress Claims (Including Plaintiffs' Unfair Competition Claims Based on Trade Dress) Because, as Pled, The Claimed Squishmallows Trade Dress Is Not Protectable ..........................................................29

        C.      The Court Should Dismiss Plaintiffs' Copyright Claim Because Plaintiffs Have Insufficiently Pled Its Elements ................................32

        D.      The Court Should Dismiss Plaintiffs' Unfair Competition Claims to the Extent Based on Copyright Because Plaintiffs' Federal Copyright Claim Preempts Any State Law Claims. ...........................33

V.      CONCLUSION ......................................................................................34

- 3 -

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### FEDERAL CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................ 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955 (2007) ............................... 7

*Benebone LLC v. Pet Qwerks, Inc.*,
No. 820CV00850ABAFMX
2020 WL 8732321 (C.D. Cal. Sept. 3, 2020) ................... 12

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
11 F. Supp. 3d 317 (E.D.N.Y. 2014) ............................... 34

*Cleary v. News Corp.*,
30 F.3d 1255 (9th Cir. 1994) ........................................... 12

*Crafty Prods. v. Michaels Cos.*,
389 F. Supp. 3d 876 (S.D. Cal. 2019) ............................. 13

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
No. CV 15-769 PSG
2015 WL 12731929 (C.D. Cal. May 8, 2015) ............... 8, 12

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ........................................................ 33

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ......................................... 11

*Greenberg v. Johnston*,
No. CV-14-046505-MWF
2014 WL 12586252 (C.D. Cal. Oct. 22, 2014) ............. 8, 12

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
4 F.3d 819 (9th Cir. 1993) ............................................... 29

*Interactive Health LLC v. King Kong United States, Inc.*,
No. CV 06-1902-VBF(PLAx)
2008 WL 11337393 (C.D. Cal. Mar. 6, 2008) ................. 12

*Kellytoy Worldwide, Inc. v. TY, Inc.*,
    No. 20 C 748
    2020 WL 5026255 (N.D. Ill. Aug. 25, 2020).......................................................30

*Kodadek v. MTV Networks, Inc.*,
    152 F.3d 1209 (9th Cir. 1998)..............................................................................33

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008)..............................................................................11

*Opulent Treasures, Inc. v. Ya Ya Creations, Inc.*,
    No. 222CV02616SSSJCX
    2023 WL 4681565 (C.D. Cal. July 13, 2023) ......................................................30

*Parker v. Hinton*,
    No. 22-5348
    2023 WL 370910 (6th Cir. Jan. 24, 2023).............................................................32

*R & A Synergy LLC v. Spanx, Inc.*,
    No. 2:17-CV-09147-SVW-AS
    2019 WL 4390564 (C.D. Cal. May 1, 2019)..................................................30, 31

*SCG Characters LLC v. Telebrands Corp.*,
    No. CV1500374DDPAGRX
    2015 WL 4624200 (C.D. Cal. Aug. 3, 2015) .......................................................31

*Shelbyco Inc. v. Western Trimming Corp.*,
    No. 2:97-CV-196C
    1997 WL 377982 (D. Utah. May 12, 1997) .........................................................28

*Silvers v. Sony Pictures Entm't, Inc.*,
    402 F.3d 881 (9th Cir. 2005).................................................................................33

*Sleep Sci. Partners v. Lieberman*,
    No. 09-04200 CW
    2010 WL 1881770 (N.D. Cal. May 10, 2010) .....................................................12

*Sugarfina, Inc. v. Sweet Pete's LLC*,
    No. 17-CV-4456-RSWL-JEM
    2017 WL 4271133 (C.D. Cal. Sept. 25, 2017)...............................................11, 28

*Toyo Tire & Rubber Co. v. CIA Wheel Grp.*,
    No. SACV150246DOCDFMX
    2016 WL 6138416 (C.D. Cal. May 6, 2016)........................................................28

- 5 -

*Vision Sports, Inc. v. Melville Corp.*,
   888 F.2d 609 (9th Cir. 1989) ................................................................ 8

*W. Mining Council v. Watt*,
   643 F.2d 618 (9th Cir. 1981) .............................................................. 11

*Wal–mart v. Samara Bros., Inc.*,
   529 U.S. 205 (2000) ..................................................................... 29, 30

*Walker & Zanger, Inc. v. Paragon Indus.*,
   549 F. Supp. 2d 1168 (N.D. Cal. 2007) ............................................. 12

*Williams v. Bridgeport Music, Inc.*,
   No. LA CV13-06004 JAK (AGRx)
   2014 WL 7877773, at *9 (C.D. Cal. Oct. 30, 2014) .......................... 32

### FEDERAL STATUTES AND RULES

37 C.F.R.
   § 2.52 .................................................................................................. 28

15 U.S.C.
   § 1127 ................................................................................................. 11

### STATE STATUTES AND RULES

Cal. Bus. and Prof. Code
   § 17200 ............................................................................................... 12

### MISCELLANEOUS

1 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR
   COMPETITION § 8:5.50 (5th ed. 2020) ......................................... 8, 12

## I.   **INTRODUCTION**

As they have previously done in multiple lawsuits (including in this District), Plaintiffs attempt to assert in this lawsuit overly broad, vague, generic, and ever-changing rights in unregistered trade dress purportedly associated with their Squishmallows product line.  Plaintiffs even acknowledge in their own Complaint that they themselves have difficulty articulating the contours of their supposed unregistered rights.  *See* ECF No. 1, ¶26 (conceding their alleged trade dress "is not easily reduced to writing").  In their latest claims, this time against Defendant Build-A-Bear Workshop, Inc. ("Build-A-Bear"), Plaintiffs have entirely failed to articulate a plausible and proper definition of their asserted trade dress and thereby have failed to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007).

Based on Plaintiffs' pleading failures, the Court should dismiss Plaintiffs' claims against Build-A-Bear for trade dress infringement under the Lanham Act and California common law (Counts I and II) as well as Plaintiffs' California statutory and common law claims for unfair competition (Counts IV and V) to the extent premised on the alleged trade dress rights.  The Court should also dismiss Plaintiffs' copyright claim (Count III) for similar pleading deficiencies.[1]

Trade dress generally refers to the non-functional physical detail and design of a product that clearly distinguishes it from the products of others, such that consumers identify these products as coming from a single and exclusive source (typically

---

[1] Prior to Plaintiffs' filing of the instant lawsuit, Build-A-Bear filed a declaratory judgment lawsuit against Plaintiffs in the United States District Court for the Eastern District of Missouri, in which Build-A-Bear seeks declarations that any claims by Plaintiffs under the Lanham Act relating to their Squishmallows product line are invalid, unenforceable, and Plaintiffs' rights are not infringed by Build-A-Bear's SKOOSHERZ™ plush toys. *See* Exhibit N, *Build-A-Bear Workshop, Inc. v. Kelly Toys Holdings, LLC, et al.*, Case No. 24-cv-00211 (E.D. Mo.), ECF No. 1. Build-A-Bear has also filed a Motion to Enjoin Plaintiffs from proceeding with this later-filed case in this Court. *See id.*, ECF Nos. 11-12.  By filing this Motion to Dismiss, Build-A-Bear does not waive its position that its first-filed case should proceed while Plaintiffs are enjoined from proceeding with this later-filed case.

referred to as "secondary meaning" in the marketplace). *See Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613-615 (9th Cir. 1989). Plaintiffs bear the burden to sufficiently plead not only the non-functionality and secondary meaning of its trade dress, but also to clearly and specifically define in the Complaint the elements of their claimed trade dress. *See Greenberg v. Johnston*, No. CV-14-046505-MWF (VBKx), 2014 WL 12586252, at *3 (C.D. Cal. Oct. 22, 2014); *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769 PSG (SSx), 2015 WL 12731929, at *3 (C.D. Cal. May 8, 2015) ("A plaintiff should clearly articulate its claimed trade dress to give a defendant sufficient notice.").

Plaintiffs' purported trade dress claims under the Lanham Act and state law fail to articulate a plausible and proper definition of their asserted trade dress. Over the course of multiple lawsuits attempting to claim unregistered trade dress rights in their Squishmallows product line, Plaintiffs have concocted thirteen different descriptions of those purported rights. With regard to Build-A-Bear, Plaintiffs assert one such iteration of their purported trade dress in this lawsuit, after asserting <u>three different</u> iterations against Build-A-Bear just two weeks earlier in Florida state court.

Plaintiffs' shifting sands approach is the direct result of the commonly recognized fact that, "[w]hen it is claimed that the trade dress is inherent in an entire series or line of products, the proponent faces the 'particularly difficult challenge' of proving the validity of a broadly defined trade dress which is ***common to all items in the series or line***." 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §8:5.50 (5th ed. 2020) ("McCarthy") (emphasis added). Plaintiffs' Squishmallows product line includes thousands of different-looking designs (ECF No. 1, ¶34), which vary widely in shape, color, facial features, and overall appearance. A few of the Squishmallows designs are shown here, as pulled from Plaintiffs' litigation filings over time (of which this Court is permitted to take judicial notice):

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17   <u>Exhibit A</u> submitted herewith.[2]

18        Because Plaintiffs' Squishmallows products differ so greatly, Plaintiffs'

19   descriptions of their purported rights are similarly varying, overbroad, vague, and

20   inconsistent, including generic and functional features commonly found in plush

21   products for many years, including before Squishmallows' existence.  For example,

22   Plaintiffs claim trade dress rights in "embroidered two-dimensional facial features,

23   such as eyes, nostrils, mouths" – which have been in plush toys for decades – as well

24   as "non-monochrome coloring" – which is simply a way of saying "multiple colors",

25   another basic plush toy feature used for decades by many different companies (of

26   which this Court can also take judicial notice).  In short, Plaintiffs' descriptions fail

27

28        [2] All exhibit references are to Build-A-Bear's Request for Judicial Notice.

to provide Build-A-Bear with sufficient notice of what their purported trade dress rights actually are compared to what plush toy makers have been selling for years.

This Court previously granted a Rule 12(b)(6) motion to dismiss similarly overbroad and unspecific claims of unregistered trade dress asserted in the Squishmallows product line against Dan-Dee International, another plush toy manufacturer. *See Kellytoy USA, Inc. et al. v. Dan-Dee Int'l, Ltd. et al.*, Case No. 2:18-cv-05399-JAK ("*Kellytoy v. Dan-Dee*"). In its Order, this Court called out that: "in light of the substantial differences among the designs of the products in the Squishmallows line, the images included in the [First Amended Complaint] do not provide the level of clarity about the nature and scope of the claimed trade dress as is required by the caselaw." *See* <u>Exhibit I</u>, ECF No. 39, at 9. After further pleading where yet another overbroad claim of trade dress was asserted (and then subject to another motion to dismiss), the case was voluntarily dismissed and Dan-Dee continued to sell the plush toy product at issue. *See id.*, ECF Nos. 46, 57, 71; *see also* <u>Exhibit F</u>.

Following that dismissal and acquiescence to Dan-Dee's continued sales of its purportedly infringing plush toys, Plaintiffs have nonetheless continued filing lawsuits against plush toy manufacturers for alleged trade dress infringement. Along the way, Plaintiffs have repeatedly revised and retooled their own descriptions of their alleged trade dress rights, with at least thirteen different descriptions proffered to date. This history, combined with Plaintiffs' failure to even attempt to register their purported trade dress, confirms that Plaintiffs themselves cannot clearly identify their own purported rights. *See* Decl., ¶5. If Plaintiffs could have articulated their rights in a concise and clear fashion, they would have already done so. They have not and cannot.

Reduced to its simplest form, Plaintiffs are absurdly attempting to convince this Court that they have exclusive intellectual property rights over cute plush toys with cartoon-like faces. Plaintiffs are not entitled to exclusivity over such ubiquitous

features. Because Plaintiffs cannot sufficiently describe their unregistered trade dress rights, their trade dress claims (and all other claims predicated on such purported rights) fail as a matter of law and should be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

## II.   APPLICABLE LAW

### A.   Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A Rule 12(b)(6) motion may be granted when the complaint lacks a cognizable legal theory or sufficient facts to support one. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

In considering a motion to dismiss, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit[,] allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008), or "legal conclusions ... cast in the form of factual allegations," *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

### B.   Trade Dress

The Lanham Act protects valid and subsisting trade dress from infringing uses by others where said trade dress was (at the time of its first use), and continues to be, used in commerce for source identification. *See* 15 U.S.C. § 1127.  Trade dress, specifically, "involves the total image of a product and 'may include features such as size, shape, color, color combinations, texture, or graphics.'" *Sugarfina, Inc. v. Sweet Pete's LLC*, No. 17-CV-4456-RSWL-JEM, 2017 WL 4271133, at *4 (C.D. Cal. Sept. 25, 2017) (quoting *Vision Sports, Inc.*, 888 F.2d at 613).

A plaintiff bears the burden to sufficiently plead and adequately define the elements of plaintiff's claimed trade dress, in addition to pleading non-functionality

and secondary meaning.  *See Greenberg*, 2014 WL 12586252, at *3; *Deckers*, 2015 WL 12731929, at *3.   Otherwise, without a clearly articulated and adequate definition, the defendant is not properly put on notice of what does or does not infringe or even what the elements are to analyze validity and infringement.  *See Sleep Sci. Partners v. Lieberman*, No. 09-04200 CW, 2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010).  California trade dress and unfair competition law track the same requirements for pleading trade dress as the Lanham Act.  *See Benebone LLC v. Pet Qwerks, Inc.*, No. 820CV00850ABAFMX, 2020 WL 8732321, at *5 (C.D. Cal. Sept. 3, 2020) ("Trade dress claims under California common law are subject to the same analysis as federal trade dress claims."); *see also Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act").

The reason this is so important is that any ambiguity in the pleading stage can lead to gamesmanship and changing descriptions of the trade dress by a plaintiff as the litigation proceeds.  *See* MCCARTHY § 8:3. ("there is no reason why the plaintiff cannot define a list of elements … Only then can the court and the parties coherently define exactly what the trade dress consists of and determine whether that trade dress is valid and if what the accused is doing is an infringement.").  Clear definitions of unregistered trade dress are necessary to make sure the marketplace is operating with full information, allowing proper competition. *See Walker & Zanger, Inc. v. Paragon Indus.*, 549 F. Supp. 2d 1168, 1175-76 (N.D. Cal. 2007) ("trade dress claims raise a potent risk that relief will impermissibly afford a level of 'protection that would hamper efforts to market competitive goods.'").

Where, as here, a plaintiff claims trade dress over an entire product line, "the proponent faces the 'particularly difficult challenge' of proving the validity of a broadly defined trade dress which is ***common to all items in the series or line*.**" MCCARTHY § 8:5.50 (emphasis added); *see also Interactive Health LLC v. King*

*Kong United States, Inc.*, No. CV 06-1902-VBF(PLAx), 2008 WL 11337393, at *2 (C.D. Cal. Mar. 6, 2008) ("when a plaintiff seeks protection for an entire line of products, the plaintiff must demonstrate the trade dress signifies an overall look that is ***consistent throughout the entire line***.") (emphasis added); *Crafty Prods. v. Michaels Cos.*, 389 F. Supp. 3d 876, 882 (S.D. Cal. 2019) ("To grant such far-reaching, undefined trade dress protection [across a product line without a consistent look] would unfairly allow inventors to claim any broad design and would leave no room for competition.").

## III.   BACKGROUND

### A.   The Squishmallows Products

In their Complaint, Plaintiffs claim to be the sole and exclusive owners of unregistered trade dress rights in their entire Squishmallows product line.  *See* Complaint, ¶¶24.  However, Plaintiffs' definitions of those rights have not only changed greatly over the past five years – they have even changed as applied to Build-A-Bear in a mere two-week period.  *Compare* ECF No. 1, ¶26 (Description (13) below) *with* Exhibit L, pp. 4, 7, 25 (Descriptions (10)–(12) below).

This Court can take judicial notice of Plaintiffs' thirteen different trade dress descriptions of their Squishmallows product line, including the following:

(1)   *Kellytoy v. Dan-Dee*, ECF No. 16, First Amended Complaint (filed Aug. 24, 2018) (Exhibit I), ¶23:

    a.   substantially bell-shaped plush toys embodying fanciful renditions of animals/characters

    b.   embroidered anime-inspired minimalist, whimsical facial features

    c.   a velvety velour-like textured exterior, and

    d.   stuffing with a light "marshmallow," memory foam-like texture

///

(2)   *Kellytoy Worldwide, Inc., et al. v. Ty, Inc., et al.*, Case No. 1:20-cv-00748 (N.D. Ill.) ("*Kellytoy v. Ty*"), ECF No. 21, Memorandum in Support of Motion for Preliminary Injunction (filed Feb. 21, 2020) (Exhibit J), p. 3:

    a.   specific egg/bell shape (including the lack of a discrete head and torso) lacking proportionate, pronounced limbs

    b.   abstract, embroidered facial features based on the Japanese Kawaii style

    c.   oval/rounded graphic features

    d.   ultra-soft shell and mooshy, silky stuffing

(3)   *Kellytoy v. Ty*, ECF No. 24, Yoon Declaration (filed Feb. 21, 2020) (Exhibit J), ¶10:

    a.   the specific shape (including the lack of a discrete head and torso) lacking proportionate, pronounced limbs

    b.   Kawaii abstract, embroidered facial features

    c.   oval/rounded graphic features

    d.   an ultra-soft shell and mooshy, silky stuffing

(4)   *Kellytoy v. Ty*, ECF No. 24, Yoon Declaration (Exhibit J), ¶28:

    a.   egg/bell-like shape

    b.   absence of proportionate/pronounced limbs

    c.   simplified Kawaii-inspired aesthetics

    d.   short pile silky shell

    e.   airy, silky stuffing

(5)   *Kellytoy v. Ty*, ECF No. 69, First Amended Complaint (filed May 21, 2020) (Exhibit J), ¶32:

- 14 -

       a.     substantially egg/bell shaped plush toys depicting various similarly shaped fanciful renditions of animals/characters

       b.     simplified Asian style Kawaii faces with repeating and complementary rounded/oval shaped graphics depicting features on the characters themselves (such as eyes, snouts and bellies) and which conform to and support the overall egg/bell shape of the toys

       c.     embroidered facial features, such [as] nostrils, and/or mouths

       d.     distinctive contrasting and non-monochrome coloring

       e.     short-pile velvety velour-like textured exterior with a light and silky memory foam-like stuffing providing an extremely soft and squeezable marshmallow feel

(6)    *Kellytoy v. Ty*, ECF No. 105, Second Amended Complaint (filed Oct. 21, 2020) (Exhibit J), ¶34; *Kellytoy Worldwide, Inc. v. Hugfun International, Inc.*, Case No. CV-19-07652-MWF (C.D. Cal.) ("*Kellytoy v. Hugfun*"), ECF No. 27, First Amended Complaint (filed Dec. 4, 2019) (Exhibit M), ¶22:[3]

       a.     substantially egg/bell shaped plush toys depicting various similarly shaped fanciful renditions of animals/characters

       b.     simplified Asian style Kawaii faces with repeating and complementary rounded/oval shaped graphics depicting features on the characters themselves (such as eyes, snouts and bellies)

---

[3] In *Kellytoy v. Hugfun*, Judge Fitzgerald in this Court granted dismissal against a defendant on other grounds, but preliminarily found the trade dress definition sufficient. ECF No. 26. However, Plaintiffs failed to inform Judge Fitzgerald of the Dan-Dee dismissal order granted just a month prior. *Id.*, ECF No. 19.

and which conform to and support the overall egg/bell shape of the toys

c.    embroidered facial features, such as nostrils, eyes and/or mouths

d.    distinctive contrasting and non-monochrome coloring

e.    short-pile velvety velour-like textured exterior with a light and silky memory foam-like stuffing providing an extremely soft and squeezable marshmallow feel

(7)    *Kelly Toys Holdings, LLC, et al v. Zuru, LLC*, Case No. 2:23-cv-09255 (C.D. Cal.) ("*Kelly Toys v. Zuru*"), ECF No. 1, Complaint (filed Nov. 2, 2023) (Exhibit K), ¶3:[4]

a.    shaped fanciful renditions of animals/characters

b.    simplified Asian style Kawaii faces

c.    embroidered facial features

d.    distinctive and non-monochrome coloring

e.    velvety velour-like textured exterior

(8)    *Kellytoys v. Dan-Dee*, ECF No. 46, Second Amended Complaint (filed March 5, 2019) (Exhibit I), ¶23; *Kelly Toys v. Zuru*, ECF No. 26-2, Exhibit A to Opposition to Motion to Dismiss (filed Jan. 22, 2024) (Exhibit K), ¶23:

a.    substantially egg/bell shaped plush toys depicting various similarly shaped fanciful renditions of animals/characters

b.    simplified Asian style Kawaii faces with repeating and complementary rounded/oval shaped graphics depicting features

---

[4] Zuru has a pending motion to dismiss Plaintiffs' trade dress and copyright claims against it before Judge Scarsi in this Court. *See Kelly Toys v. Zuru*, ECF No. 23.

on the characters themselves (such as eyes, snouts and bellies) and which conform to and support the overall egg/bell shape of the toys

c.  embroidered two-dimensional facial features, such as eyes, nostrils, mouths

d.  distinctive contrasting and non-monochrome coloring

e.  short-pile velvety velour-like textured exterior with a light and silky memory foam-like stuffing providing an extremely soft and squeezable marshmallow feel

(9)  *Kelly Toys v. Zuru*, ECF No. 26, Opposition to Motion to Dismiss (filed Jan. 22, 2024) (Exhibit K), p. 1:

a.  fanciful rendition of a unique animal with simplified Asian style Kawaii faces in an egg/bell shape in combination with other features that create a distinguishing aesthetic look

(10) *Kelly Toys Holdings, LLC, et al.. v. Build-A-Bear Workshop, Inc.*, Case No. CACE-24-001221 (Florida 17th Cir. Ct.) ("*Kelly Toys v. Build-A-Bear – Florida*"), Emergency Motion for Temporary Injunction (filed Jan. 29, 2024) (Exhibit L), p. 4:

a.  substantially egg/bell shaped plush toys depicting various similarly shaped fanciful renditions of animals/characters

b.  simplified Asian style Kawaii faces with repeating and complementary rounded/oval shaped graphics depicting features on the characters themselves (such as eyes, snouts and bellies) and which conform to and support the overall egg/bell shape of the toys

c.  embroidered facial features, such as eyes, nostrils, and/or mouths

- 17 -

1          d.      distinctive contrasting and non-monochrome coloring

2          e.      short-pile exterior

3

4     (11)  *Kelly Toys v. Build-A-Bear – Florida*, Emergency Motion for

5          Temporary Injunction (<u>Exhibit L</u>), p. 7:

6          a.      shaped fanciful renditions of animals/characters

7          b.      simplified Asian style Kawaii faces

8          c.      embroidered facial features

9          d.      distinctive and non-monochrome coloring

10         e.      short-pile exterior

11

12    (12)  *Kelly Toys v. Build-A-Bear – Florida*, Emergency Motion for

13         Temporary Injunction (<u>Exhibit L</u>), p. 25:

14         a.      Asian-style Kawaii faces

15         b.      rounded shape

16         c.      embroidered facial features

17         d.      bright colors

18         e.      small facial features

19         f.      small appendages

20         g.      overall unique minimalistic depiction of cute animals and shapes

21

22    (13)  *Kelly Toys Holdings, LLC, et al.  v. Build-A-Bear Workshop, Inc.*, Case

23         No. 2:24-cv-01169 (C.D. Cal.), ECF No. 1, ¶26:

24         a.      substantially egg/bell/oval[5] shaped plush toys depicting various

25                 similarly shaped fanciful renditions of animals/characters

26

27    _____

28    [5] Description 13, asserted against Build-A-Bear in this Court, adds the word
"oval" in elements a. and b. to Description 6.

b.    simplified Asian style Kawaii faces with repeating and complementary rounded/oval shaped graphics depicting features on the characters themselves (such as eyes, snouts and bellies) and which conform to and support the overall egg/bell/oval shape of the toys

c.    embroidered facial features, such as nostrils, eyes and/or mouths

d.    distinctive contrasting and non-monochrome coloring

e.    short-pile velvety velour-like textured exterior with a light and silky memory foam-like stuffing providing an extremely soft and squeezable marshmallow feel

(any and all combinations of the foregoing are hereinafter referred to as the "Claimed Squishmallows Trade Dress").  *See* Exhibits I–M.

These varying, but more importantly, inadequate descriptions of the trade dress (including the most recent description asserted against Build-A-Bear in this Court) fail to provide fair notice to competitors in the industry of Plaintiffs' claimed trade dress rights. As just one example, what began as Plaintiffs' asserted rights in "embroidered anime-inspired minimalist, whimsical facial features" (Description (1), above), eventually became "Asian style Kawaii faces" with "embroidered facial features" (Description (12), above – asserted against Build-A-Bear on January 29, 2024), and now is "simplified Asian style Kawaii faces with repeating and complementary rounded/oval shaped graphics depicting features on the characters themselves (such as eyes, snouts and bellies) and which conform to and support the overall egg/bell/oval shape of the toys" (Description (13), above – asserted against Build-A-Bear on February 12, 2024).  If Plaintiffs cannot clearly define their own asserted unregistered trade dress rights (even over a two-week period), it is impossible for competitors like Build-A-Bear to know what those asserted rights are and guide their actions accordingly.

However, no matter how creative Plaintiffs' endeavors into wordsmithing are, the various vague features Defendants have claimed as components of the Claimed Squishmallows Trade Dress are not all consistently present throughout the entire Squishmallows product line (which, according to Plaintiffs, has over 3,000 plush characters) (ECF No. 1, ¶34), undermining the assertion of a total product image recognizable by the consuming public as an identifier of a single source.   The continuously varying descriptions fall well short of providing Build-A-Bear with sufficient notice under the law.  *See* <u>Exhibits A–D</u> and <u>I–M</u>; ECF No. 1, ¶¶23-25, 30, 61, 73 (referring to the features of the Squishmallows not as source identifiers but as "designs" or "product designs"); <u>Exhibit L</u>, Verified Complaint, ¶¶19, 20, 26, 42 (same).   As shown below, no consistent overall look and feel or stable visual appearance can easily be discerned from a review of just a few of Plaintiffs' Squishmallows products:



///

///

*See, e.g.*, Exhibits A–D.

In these examples shown above, the snouts are all different (*e.g.*, circular, oval, triangular, and "comma" shaped), with some containing a nose attached to a curved mouth (dog, leopard, bear, sheep, mouse), one containing a nose and a separate mouth (sloth), some containing nostrils only (unicorn, pig, frog, giraffe), one with lines to resemble an elephant trunk, and some toys lacking a snout altogether (penguin, monkey). One cannot discern "distinctive contrasting and non-monochrome coloring" in the depicted toys, which run the gamut from various shades of black, brown, tan, white, pink, blue and gray, and including colors and prints found in nature, such as black for the bat, brown for the dog, sloth, bear and monkey, green for the frog, pink for the pig, grey for the mouse and elephant, and leopard and giraffe prints for the corresponding animals. Even the embroidered, purportedly "Asian-style" eyes have no discernible consistency:  some eyes have eyelashes (unicorn), some are placed on contrasting fabric bands or face masks (sloth, monkey, sheep), and some even have "closed" eyes (penguin, dog).  Some of the toys have contrasting, semi-circular "bellies," whereas others do not, and some have a contrasting

irregularly-shaped panel covering the face and belly of the toy (sloth, penguin). The various "appendages" also differ between the toys depicted above, with horns, manes, and differently shaped ears placed on different parts of the toys (floppy, round, folded, not folded, elephant-shaped, or none at all).

All of Plaintiffs' Squishmallows products do not have "rounded/oval shaped graphics depicting features of the characters themselves (such as eyes, snouts and bellies) and which conform to and support the overall egg/bell shape of the toys". Instead, Plaintiffs' Squishmallows products have all manner of features and graphics that are linear (scarfs, mummy tape, belts, butterfly belly, witch's bodice), squiggled (clownfish lines, gingerbread man trim and unicorn hair), triangular (elf's collar, pumpkin eyes, and dinosaur mane), or pointed (fox facial features), while others have details not "Kawaii" in style (nutcracker, jack-o-lantern, witch):







*See* <u>Exhibits A–D</u>.

Even the images shown in Plaintiffs' Complaint here show the wide range of shapes, faces, facial features, colors, and fabrics:



ECF No. 1, ¶23.  For example, these images show products with different shapes (stingray with fins, rounded octopus with tentacles); British-style faces, not Kawaii (octopus with monocle, moustache, and top hat); non-rounded facial features (panda with heart-shaped eyes, lion with closed eyes, candy character with closed eyes); monochrome or indistinct coloring (octopus, panda, mouse); and different length fabric (lion, bull).

In sum, Plaintiffs claim a variously shaped plush toy with *a* face and *a* color— a description that encompasses most of the world's plush toys.  Plaintiffs' improper attempt to hold a far-reaching monopoly over the plush toy industry, vis-à-vis the Claimed Squishmallows Trade Dress (including the most recent description asserted

against Build-A-Bear in this Complaint), is unsupported by federal or state trade dress and unfair competition law, and should be emphatically rejected by this Court.[6]

## B.  Build-A-Bear and its SKOOSHERZ™ plush toys

Although not necessary to this Court's determination on this motion to dismiss, some background on Defendant Build-A-Bear and its accused plush toy products might be helpful for the Court to gain perspective on how far Plaintiffs are trying to stretch their asserted rights.

Founded in 1997, Build-A-Bear is a multi-generational global brand with nearly 500 interactive brick-and mortar experience locations across the country and around the world, and an engaging e-commerce/digital purchasing experience on www.buildabear.com. Although Build-A-Bear started with consumers building their own stuffed plush toys, for many years Build-A-Bear has also sold pre-stuffed plush toys in its retail stores and online at www.buildabear.com and its Build-A-Bear store on Amazon.com.  *See* Exhibit N, ECF No. 1, ¶16.

In January 2024, and in anticipation of Valentine's Day celebrations, Build-A-Bear introduced on a global basis its new line of collectible plush friends bearing the SKOOSHERZ™ name.  *See* ECF No. 1, ¶4.  Build-A-Bear's SKOOSHERZ™ original plush toys are round or spherical in shape, with features matching Build-A-Bear's original, full animal designs (which it continues to sell) (shown below). *See* Exhibit N.

///

---

[6] Long before Plaintiffs introduced their Squishmallows product line allegedly featuring the claimed trade dress in 2016, third parties offered for sale and sold (and continue to sell) across the United States a number of products featuring all of the elements of Plaintiffs' claimed trade dress, including, but not limited to, Squishable's plush animal line starting in 2008 and KidRobot's Yummy World products starting in 2015. *See* Exhibits G–H.  Because third parties have been selling their squishy plush products as identified above before 2016 and for many years thereafter, consumers cannot possibly identify any features of the Claimed Squishmallows Trade Dress exclusively with Plaintiffs as the sole source.

Build-A-Bear's **SKOOSHERZ**™
Pink Axolotl

Build-A-Bear's Original
Pink Axolotl



Build-A-Bear's **SKOOSHERZ**™
Spring Green Frog

Build-A-Bear's Original
Spring Green Frog

Further, each SKOOSHERZ™ plush toy not only has labels and/or hang tags depicting Build-A-Bear's long-standing common law and federally registered Build-A-Bear Workshop® name and logo, but every SKOOSHERZ™ plush toy also has right and left arms, with one arm bearing Build-A-Bear's common law, federally registered, and iconic BAB® heart-shaped paw pad logo (shown below).  *See* Exhibit N, ECF No. 1, ¶22.

///

///



ECF No. 1, ¶¶44, 83.

Build-A-Bear's advertising and marketing of its new SKOOSHERZ™ plush toys consistently and prominently include references to Build-A-Bear as the sole and exclusive source of the SKOOSHERZ™ plush toys. *See* <u>Exhibit N</u>, ECF No. 1, ¶23.

## IV.   <u>ARGUMENT</u>

**A.   This Court Should Dismiss Plaintiffs' Trade Dress Claims (Including Plaintiffs' Unfair Competition Claims Based on Trade Dress) Because Plaintiffs Do Not and Cannot Clearly and Adequately Describe the Claimed Squishmallows Trade Dress in Order to Provide Build-A-Bear with Sufficient Notice.**

Plaintiffs' Complaint (ECF No. 1) asserts unregistered trade dress rights over the ***entire*** Squishmallows product line comprising thousands of different product designs. *See* ECF No. 1, ¶34.   In effect, Plaintiffs are trying to exclude Build-A-Bear from making cute, soft plush toys, even though such toys have existed for years before Squishmallows even came to market.   Trade dress law does not support Plaintiffs' improper monopolistic efforts nor does it support generic trade dress. Plaintiffs' vague, overbroad, and ever-changing trade dress descriptions fail to set

forth a plausible claim.  Therefore, this Court should dismiss Plaintiffs' Lanham Act and state law trade dress claims, as well as Plaintiffs' unfair competition claims to the extent premised on their purported trade dress.

Plaintiffs' Complaints against Build-A-Bear in this Court and the Florida state court, along with the various other Complaints and filings against third parties in this and other courts, evidence Plaintiffs' attempts to redefine its trade dress as they continue to face legal challenges from their adversaries. Indeed, the widely varying 13 descriptions above show Plaintiffs' inability to provide Build-A-Bear (or any defendant for that matter) with legally sufficient notice of their asserted trade dress – because, as Plaintiffs admit, they can "not easily reduce[] to writing" the Claimed Squishmallows Trade Dress. ECF No. 1, ¶26.

Further, the 3,000+ products in the entire Squishmallows product line have features that vary widely and thus are inconsistent with the Claimed Squishmallows Trade Dress, including the current description set forth in Paragraph 26 of the Complaint against Build-A-Bear.  Some products have Kawaii style faces, some do not.[7]  Some have noses, some do not.  Some are non-monochrome, some are not.  Some are brightly colored, some are not.  Some are oval, some are not.  Some have appendages, some do not.  Some have bellies, some do not.  See Exhibits A-D.

Plaintiffs cannot claim trade dress rights over a potentially unlimited number of shapes, colors, patterns, textures, and facial features embodied into a plush or stuffed toy, especially where, as here, the claimed elements existed in similar products long before the creation of the Squishmallows product and remain ubiquitous today.  See Exhibits G-H.  By changing the Claimed Squishmallows Trade

---

[7] The Oxford English Dictionary defines "Kawaii" as: "[c]ute, esp. in a manner considered characteristic of Japanese popular culture; charming, darling; ostentatiously adorable." See www.oed.com. Although Build-A-Bear contends otherwise, if the term "Kawaii" is sufficiently defined in itself, the absence of any consistent look across the product line undercuts the descriptor as-applied. Moreover, "Kawaii" is simply "anime" by another name, which originated long before creation of the Squishmallows product line.

Dress description at least thirteen times, Plaintiffs have proven the futility of attempting to craft one complete description of the trade dress elements because the Squishmallows designs in the product line take the form of numerous varying features. *See* Exhibits A-D.  Indeed, there is no common feature across the entire line and Plaintiffs cannot obtain intellectual property rights over plush toys generally.  *See Shelbyco Inc. v. Western Trimming Corp.*, No. 2:97-CV-196C, 1997 WL 377982, at *4 (D. Utah. May 12, 1997) ("[T]he only consistent feature in [plaintiff's] trade dress is the display of commonplace, ordinary shapes in various colors.").

Plaintiffs' inability to formulate a list of the elements that make up its trade dress also makes it impossible for Plaintiffs to provide "sufficient notice of [their] trade dress claim." *Sugarfina*, No. 17-CV-4456-RSWL-JEM, 2017 WL 4271133, at *4.  Moreover, although "image[s] of the trade dress … greatly assist[] courts in clarifying what design or mark a plaintiff seeks to protect," in this case, images of Plaintiffs' Claimed Squishmallows Trade Dress (*i.e.*, the Squishmallows products themselves) only create further confusion because the images themselves clearly show an inconsistent overall look. *See Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SACV150246DOCDFMX, 2016 WL 6138416, at *3 (C.D. Cal. May 6, 2016).

In tacit recognition of the ever-varying features of the Squishmallows product line, Plaintiffs have never attempted to obtain federal registration of the Claimed Squishmallows Trade Dress (*see* Decl., ¶5), and for good reason – it is highly doubtful Plaintiffs could ever come up with any drawing of claimed elements of the Squishmallows product line that could properly satisfy regulatory notice requirements.  *See* 37 C.F.R. §2.52; Trademark Manual of Examining Procedure §1202.02(c) – (c)(i). Because there are no common source-identifying features across the Squishmallows product line, any attempt to represent them visually in an application with the Trademark Office would devolve into a collection of random dashed lines.  If a claimed trade dress is so abstract and so varied across a product

line that it could not be feasibly depicted in a federal registration, it must be rejected here.

The fact of the matter is that Plaintiffs' current description of its asserted trade dress is so amorphous, vague, and inconsistent with its Squishmallows product line, as have been the other twelve descriptions asserted in the last five years (including three different descriptions asserted against Build-A-Bear by Plaintiffs in a Florida state court lawsuit just two weeks before the instant Complaint was filed). This Court should therefore dismiss all of Plaintiffs' trade dress claims (and unfair competition claims dependent thereon) for failure to state a claim under FED. R. CIV. P. 12(b)(6).

**B.    This Court Should Dismiss Plaintiffs' Trade Dress Claims (Including Plaintiffs' Unfair Competition Claims Based on Trade Dress) Because, as Pled, The Claimed Squishmallows Trade Dress Is Not Protectable.**

Additionally, the Claimed Squishmallows Trade Dress – including the description asserted here in paragraph 26 of the Complaint (one of Plaintiffs' thirteen different descriptions) – is not protectable in the first instance. This is because: (1) Plaintiffs have failed to adequately plead facts supporting secondary meaning of the Claimed Squishmallows Trade Dress; and (2) the descriptions of the Claimed Squishmallows Trade Dress are so generic and commonplace that it cannot be protected under the law even if secondary meaning in the marketplace could be proven.

As background, some trade dress is considered "inherently distinctive," in that their "intrinsic nature serves to identify a particular source." *Wal–mart v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000). Trade dress that is not inherently distinctive may nevertheless acquire distinctiveness (*i.e.*, "secondary meaning") over time if the public forms a sufficiently strong "learned association" between the trade dress and the source or brand it is intended to signify. *See Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 824 (9th Cir. 1993) (suggesting that a plaintiff could create ///

a secondary meaning by "urging consumers to look for" the specific differentiating features of the claimed trade dress).

However, "[t]he shape or design of a product *cannot* intrinsically identify the product's source in the way that certain brand names, logos, or even product packaging may." *Opulent Treasures, Inc. v. Ya Ya Creations, Inc.*, No. 222CV02616SSSJCX, 2023 WL 4681565, at *3 (C.D. Cal. July 13, 2023) (emphasis added). Instead, a product's design may *only* be protected as trade dress if it has acquired distinctiveness. *See Wal–mart*, 529 U.S. at 211-12, 216. Evidence of past sales, alone, is irrelevant unless it is proven that the sales were actually driven by Plaintiffs' trade dress. *See, e.g.*, *Kellytoy Worldwide, Inc. v. TY, Inc.*, No. 20 C 748, 2020 WL 5026255, at *3 (N.D. Ill. Aug. 25, 2020) ("popularity and engagement with a product do not necessarily suggest a connection between the product and its source.").

Here, Plaintiffs admit in their Complaint that the Claimed Squishmallows Trade Dress encompasses "product design" but then only pleads as facts its efforts to market the product and its purported sales volume as supporting secondary meaning. *See, e.g.*, ECF No. 1, ¶¶23-25, 30, 61, 73. These facts, as pled, are insufficient to plead secondary meaning in this product design.

Further, this Court has recognized that trade dress protection is not meant to extend to broad, imprecisely defined, and generic product designs because of "the risk that jurors will interpret the same trade dress differently, the possibility that jurors or courts will be unable to determine functionality or secondary meaning, the likely overbreadth of the trade dress claim, and the difficulty in crafting narrowly-tailored injunctive relief." *R & A Synergy LLC v. Spanx, Inc.*, No. 2:17-CV-09147-SVW-AS, 2019 WL 4390564, at *4 (C.D. Cal. May 1, 2019). "For these reasons, 'generic product designs are unprotectible *even upon* a showing of secondary meaning.'" *Id.* (quoting *Walker*, 549 F. Supp. 2d. at 1174) (emphasis added). ///

"Genericness" can occur "if the definition of a product design is overbroad or too generalized" or "if the product design is so common in the industry that it cannot be said to identify a particular source." *R & A Synergy LLC*, 2019 WL 4390564, at *4; *see id.* (determining that plaintiff's trade dress was generic because the definition of its trade dress product design was "far too overbroad and generalized" where it "[did] not describe[] any particular color, shape, fabric, or arrangement of materials … with sufficient specificity"); *see also SCG Characters LLC v. Telebrands Corp.*, No. CV1500374DDPAGRX, 2015 WL 4624200, at *7 (C.D. Cal. Aug. 3, 2015) ("For example, the elements of 'brightly colored fur' and 'exaggerated anatomical features' should be more clearly described.").

In this case, Plaintiffs' description of its trade dress in Paragraph 26 of the Complaint (as well as Plaintiffs' other twelve descriptions discussed above) reveals a vague, overbroad, and outright generic purported trade dress as well as a product design that has been commonplace in the plush toy industry for decades (or longer), and therefore unworthy of trade dress protection irrespective of acquired distinctiveness, if any.  Plaintiffs' Claimed Squishmallows Trade Dress fails to specify elements such as the color, shape, fabric, and facial features of their product designs, which inconsistently appear in their product line.  Generic references like "non-monochrome coloring" (*i.e.*, multiple colors), "embroidered two-dimensional facial features" (*i.e.*, any sewn facial features), and "short-pile velvety velour-like textured exterior" with "an extremely soft and squeezable marshmallow feel" (*i.e.*, short fabric outside, squeezable material inside) are "far too overbroad and generalized" because they do "not describe[] any particular color, shape, fabric, or arrangement of materials … with sufficient specificity".  *R & A Synergy LLC*, 2019 WL 4390564, at *4.

For these reasons, the Claimed Squishmallows Trade Dress as set forth in Paragraph 26 of the Complaint (and, for that matter, Plaintiffs' other varying descriptions) is generic and commonplace and cannot be protected under the law.

**C.    The Court Should Dismiss Plaintiffs' Copyright Claim Because Plaintiffs Have Insufficiently Pled Its Elements**

*(1)    Plaintiffs Fail to Properly Plead the Copyrighted Work.*

Plaintiffs' Complaint sets forth a table at Paragraph 29 in which the left column has a heading that reads "Copyrighted Works" above two photographs of Squishmallows designs, while the righthand column purports to have corresponding copyright registration numbers.  However, the Complaint fails to allege that the toys depicted are the same as the images submitted in the deposit copies to the United States Copyright Office. Simply put, Plaintiffs have failed to allege or otherwise confirm in the parties' meet-and-confer that the photographs of the purported "Copyrighted Works" in the table at Paragraph 29 are actually those for which Plaintiff Kelly Toys Holdings, LLC maintains registration.  *See Parker v. Hinton*, No. 22-5348, 2023 WL 370910, at *4-5 (6th Cir. Jan. 24, 2023) ("copyright protects original material to the extent it is contained in the deposit copy…. Thus, a plaintiff must use the deposit copy to establish the ownership component of a copyright infringement claim.").

The Copyright Office does not maintain readily available records of deposit copies, so Build-A-Bear cannot simply review them online.  While Build-A-Bear could ultimately obtain those records in discovery if the case proceeded, Build-A-Bear is currently uncertain of what the actual toys in the deposit copy images look like, and thus is not on sufficient notice of the copyright claim to be able to prepare its defenses.  Until and unless Plaintiffs allege and show what the copyright deposit copies consist of, the copyright claim is not properly pled because it is the copyright deposit copy which controls the scope of protection, if any.  *See Williams v. Bridgeport Music, Inc.*, No. LA CV13-06004 JAK (AGRx), 2014 WL 7877773, at *9 (C.D. Cal. Oct. 30, 2014) ("the deposit copy or a comparable writing defines the scope of what is protected").

///

1         (2)    *Three of the Four Plaintiffs Lack Standing.*

2        To the extent Plaintiffs set forth a claim of copyright infringement as to the

3    Copyrighted Works, Plaintiffs have failed to allege any basis for standing as to Kelly

4    Amusement Holdings, LLC, Jazwares, LLC, and Jazplus, LLC because none of the

5    three are alleged owners of the copyrights, as required for standing. *See Feist*

6    *Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Silvers v. Sony*

7    *Pictures Entm't, Inc.*, 402 F.3d 881, 887-88 (9th Cir. 2005). Plaintiffs' counsel

8    concedes in the parties' meet-and-confer that only Plaintiff Kelly Toys Holdings has

9    standing to proceed on these claims. *See* Decl., ¶5.

10       **D.**    **The Court Should Dismiss Plaintiffs' Unfair Competition Claims to**

11            **the Extent Based on Copyright Because Plaintiffs' Federal Copyright Claim Preempts Any State Law Claims.**

12

13       The Court should dismiss Plaintiffs' state law unfair competition claims (their

14   Fourth and Fifth Causes of Action), insofar as they are based on purported

15   Copyrighted Works relied upon in their federal claim. Federal copyright law

16   preempts state law unfair competition claims to the extent based on the equivalent

17   right under federal copyright laws. *See Kodadek v. MTV Networks, Inc.*, 152 F.3d

18   1209, 1213 (9th Cir. 1998).

19       Plaintiffs acknowledged this limitation in *Kelly Toys v. Zuru* (Exhibit K,

20   No. 23, pp. 24-25), but nonetheless seek judgment here against Build-A-Bear in the

21   Complaint's Prayer for Relief (ECF No. 1, ¶f) that the alleged copyright infringement

22   also violates common and statutory law. In the parties' meet-and-confer, Plaintiffs

23   conceded that, to the extent premised on copyright, their state law claims are

24   preempted by federal copyright law. *See* Decl., ¶5. Plaintiffs' state law claims should

25   thus be dismissed to the extent based on copyright.

26   ///

27   ///

28

## V.     <u>CONCLUSION</u>

Defendant Build-A-Bear respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety, including dismissing Plaintiffs' trade dress claims and unfair competition claims based on the Claimed Squishmallows Trade Dress, with prejudice, because allowing Plaintiffs to attempt a fourteenth trade dress description will not cure Plaintiffs' fundamental legal defects and would be futile, *see, e.g.*, *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 347 (E.D.N.Y. 2014), and award any further relief to Build-A-Bear as this Court deems appropriate.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td>DATED: March 5, 2024</td><td>**KEESAL, YOUNG & LOGAN**</td></tr>
<tr><td></td><td>By:  */s/ Stacey M. Garrett*_____</td></tr>
<tr><td></td><td>Ben Suter, CASB No. 107680<br>ben.suter@kyl.com<br>Stacey M. Garrett, CASB No. 155319<br>stacey.garrett@kyl.com<br>A Professional Corporation<br>400 Oceangate, Suite 1400<br>Long Beach, California 90802<br>(562) 436-2000<br>(562) 436-7416 (fax)</td></tr>
<tr><td></td><td>**LEWIS RICE LLC**<br>Michael J. Hickey, applying *Pro Hac Vice*<br>mhickey@lewisrice.com<br>Philip J. Mackey, applying *Pro Hac Vice*<br>pmackey@lewisrice.com<br>600 Washington Avenue, Suite 2500<br>St. Louis, Missouri 63101<br>(314) 444-7630<br>(314) 612-7630 (fax)</td></tr>
</table>

1

## **WORD COUNT CERTIFICATION**

2       The undersigned, counsel of record for Defendant Build-A-Bear Workshop,

3   Inc., certifies that this brief contains 6,792 words, which complies with the word

4   limit of L.R. 11-6.1.

5

6      DATED: March 5, 2024                    **KEESAL, YOUNG & LOGAN**

7                                               By:   */s/ Stacey M. Garrett*

8                                               Ben Suter, CASB No. 107680
                                                ben.suter@kyl.com
9                                               Stacey M. Garrett, CASB No. 155319
                                                stacey.garrett@kyl.com
10                                              A Professional Corporation
                                                400 Oceangate, Suite 1400
11                                              Long Beach, California 90802
                                                (562) 436-2000
12                                              (562) 436-7416 (fax)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS
CASE NO. 2:24-CV-01169-JLS-MAR