**LEWIS RICE LLC**
Michael J. Hickey, *Pro Hac Vice*
mhickey@lewisrice.com
Philip J. Mackey, *Pro Hac Vice*
pmackey@lewisrice.com
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
(314) 444-7630
(314) 612-7630 (fax)

**KEESAL, YOUNG & LOGAN**
Ben Suter, CASB No. 107680
ben.suter@kyl.com
Stacey M. Garrett, CASB No. 155319
stacey.garrett@kyl.com
A Professional Corporation
400 Oceangate, Suite 1400
Long Beach, California 90802
(562) 436-2000
(562) 436-7416 (fax)

*Attorneys for Defendant Build-A-Bear Workshop, Inc.*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY TOYS HOLDINGS, LLC; JAZWARES, LLC; KELLY AMUSEMENT HOLDINGS, LLC; and JAZPLUS, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> BUILD-A-BEAR WORKSHOP, INC., <br><br> Defendant. | Case No. 2:24-cv-01169-JLS-MAR <br><br> **BUILD-A-BEAR WORKSHOP, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT UNDER FRCP 12(b)(6)** <br><br> Date:  June 28, 2024 <br> Time:  10:30 a.m. <br> Place:  Honorable Josephine L. Staton <br>        Courtroom 8A |

- 1 -

1   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2        PLEASE TAKE NOTICE that Defendant Build-A-Bear Workshop, Inc.

3   ("Build-A-Bear") respectfully moves to dismiss with prejudice Plaintiffs' Amended

4   Complaint pursuant to FED. R. CIV. P. 12(b)(6). The Motion is made on grounds that

5   Plaintiffs have failed to sufficiently plead protectable trade dress and copyright

6   infringement. Build-A-Bear reserves its rights regarding all other defenses.

7        This Motion is made following conference of counsel pursuant to L.R. 7-3 on

8   February 27, 2024, on Build-A-Bear's original Motion to Dismiss (raising the same

9   objections regarding Plaintiffs' failure to plead protectable trade dress), Plaintiffs

10   declining to participate in a subsequent conference of counsel, as well as e-mail

11   correspondence where Plaintiffs confirmed their intent to oppose Build-A-Bear's

12   current Motion to Dismiss. *See* Hickey Declaration ("Decl."), ¶¶3-6. This Motion

13   is based on the points and authorities raised herein, the accompanying Request for

14   Judicial Notice and Exhibits attached thereto, the accompanying Proposed Order, all

15   pleadings on file in this action, and such matters of which this Court may take judicial

16   notice.

17

18     DATED: April 4, 2024           **LEWIS RICE LLC**

19                      By:  */s/ Michael J. Hickey*

20                        Michael J. Hickey, *Pro Hac Vice*

21                        *Attorneys for Defendant Build-A-Bear*

22                        *Workshop, Inc.*

23

24

25

26

27

28

# **Table of Contents**

**Page**

I.   INTRODUCTION ...................................................................................... - 8 -

II.  APPLICABLE LAW ................................................................................ - 13 -

    A.   Rule 12(b)(6) ................................................................................ - 13 -

    B.   Trade Dress .................................................................................. - 13 -

III. THE SQUISHMALLOWS PRODUCTS ................................................. - 15 -

IV.  ARGUMENT ........................................................................................... - 22 -

    A.   This Court Should Dismiss, With Prejudice, Plaintiffs' Trade Dress Claims (Including Plaintiffs' Unfair Competition Claims Based on Trade Dress) Because Plaintiffs Do Not and Cannot Clearly and Adequately Describe the Claimed Squishmallows Trade Dress in Order to Provide Build-A-Bear with Sufficient Notice. ........................................................................................ - 22 -

    B.   This Court Should Dismiss, With Prejudice, Plaintiffs' Trade Dress Claims (Including Plaintiffs' Unfair Competition Claims Based on Trade Dress) Because, as Pled, The Claimed Squishmallows Trade Dress Is Not Protectable ............................. - 25 -

    C.   The Court Should Dismiss, With Prejudice, Plaintiffs' Copyright Claim for Failure to Adequately Plead Substantial Similarity. ...... - 28 -

    D.   The Court Should Dismiss Plaintiffs' Complaint With Prejudice. - 30 -

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### FEDERAL CASES

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................ 13

*Benebone LLC v. Pet Qwerks, Inc.*,
 No. 820CV00850ABAFMX, 2020 WL 8732321 (C.D. Cal. Sept. 3,
 2020).................................................................................................... 14

*C&SM Int'l. v. JollyChic, Inc.*,
 No. CV183510MWFJEMX, 2019 WL 926328 (C.D. Cal. Jan. 8,
 2019).................................................................................................... 28

*Carlini v. Paramount Pictures Corp.*,
 No. 2:19-CV-08306-SB-RAP, 2021 WL 911684 (C.D. Cal. Feb. 2,
 2021), *aff'd*, No. 21-55213, 2022 WL 614044 (9th Cir. Mar. 2,
 2022).................................................................................................... 31

*Cleary v. News Corp.*,
 30 F.3d 1255 (9th Cir. 1994).............................................................. 14

*Crafty Prods. v. Michaels Cos.*,
 389 F. Supp. 3d 876 (S.D. Cal. 2019) .......................................... 15, 17

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
 No. CV 15-769 PSG, 2015 WL 12731929 (C.D. Cal. May 8, 2015) ................. 9

*DuMond v. Reilly*,
 No. CV 19-8922-GW-AGRX, 2021 WL 4772986 (C.D. Cal. Jan. 8,
 2021).................................................................................................... 32

*Eminence Capital, LLC v. Aspeon, Inc.*,
 316 F.3d 1048 (9th Cir. 2003).......................................................31, 32

*In re Gilead Scis. Sec. Litig.*,
 536 F.3d 1049 (9th Cir. 2008)............................................................ 13

*Greenberg v. Johnston*,
 No. CV-14-046505-MWF, 2014 WL 12586252 (C.D. Cal. Oct. 22,
 2014)...................................................................................................... 9

- 4 -

*Hardwell v. Parker*,
No. CV219100DMGPVCX, 2022 WL 16894520 (C.D. Cal. Aug.
25, 2022) .............................................................................................. 28

*Hawkins v. Thomas*,
No. EDCV 09-1862 JST SS, 2012 WL 1944828 (C.D. Cal. May 29,
2012) .................................................................................................... 31

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
4 F.3d 819 (9th Cir. 1993) .................................................................. 25

*Interactive Health LLC v. King Kong United States, Inc.*,
No. CV 06-1902-VBF(PLAx), 2008 WL 11337393 (C.D. Cal. Mar.
6, 2008) ......................................................................................... 14, 17

*Kelly Toys Holdings, LLC, et al v. Zuru, LLC*,
Case No. 2:23-cv-09255-MCS-AGR ............................... 11, 12, 27, 28

*Kellytoy USA, Inc. et al. v. Dan-Dee Int'l, Ltd. et al.*,
Case No. 2:18-cv-05399-JAK ............................................................. 11

*Kellytoy Worldwide, Inc. v. TY, Inc.*,
No. 20 C 748, 2020 WL 5026255 (N.D. Ill. Aug. 25, 2020) .............. 26

*Kizler v. Budget Fin. Co.*,
No. CV 5:20-0296-DOC-KK, 2020 WL 4037212 (C.D. Cal. Apr. 1,
2020) .................................................................................................... 31

*Leatherman Tool Grp., Inc. v. Cooper Indus.*,
199 F.3d 1009 (9th Cir. 1999) ............................................................ 27

*Marcus v. ABC Signature Studios, Inc.*,
279 F. Supp. 3d 1056 (C.D. Cal. 2017)............................................... 28

*Mattel, Inc. v. MGA Entm't, Inc.*,
616 F.3d 904 (9th Cir. 2010), *as amended on denial of reh'g* (Oct.
21, 2010).............................................................................................. 29

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) ............................................................ 13

*Nevijel v. North Coast Life Ins. Co.*,
651 F.2d 671 (9th Cir. 1981) .............................................................. 31

- 5 -

*Opulent Treasures, Inc. v. Ya Ya Creations, Inc.*,
   No. 222CV02616SSSJCX, 2023 WL 4681565 (C.D. Cal. July 13,
   2023) ...................................................................................................... 26

*Pretty in Plastic, Inc. v. Bunn*,
   793 Fed. Appx. 593 (9th Cir. 2020) ..................................................... 32

*R & A Synergy LLC v. Spanx, Inc.*,
   No. 2:17-CV-09147-SVW-AS, 2019 WL 4390564 (C.D. Cal. May
   1, 2019) ............................................................................................ 26, 27

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) ............................................................... 31

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) ............................................................... 29

*SCG Characters LLC v. Telebrands Corp.*,
   No. CV1500374DDPAGRX, 2015 WL 4624200 (C.D. Cal. Aug. 3,
   2015) ...................................................................................................... 27

*Shelbyco Inc. v. Western Trimming Corp.*,
   No. 2:97-CV-196C, 1997 WL 377982 (D. Utah. May 12, 1997) ....................... 24

*Sleep Sci. Partners v. Lieberman*,
   No. 09-04200 CW, 2010 WL 1881770 (N.D. Cal. May 10, 2010) .............. 14, 23

*Sugarfina, Inc. v. Sweet Pete's LLC*,
   No. 17-CV-4456-RSWL-JEM, 2017 WL 4271133 (C.D. Cal. Sept.
   25, 2017) ........................................................................................ 13, 23, 24

*Toyo Tire & Rubber Co. v. CIA Wheel Grp.*,
   No. SACV150246DOCDFMX, 2016 WL 6138416 (C.D. Cal. May
   6, 2016) .................................................................................................. 24

*Vision Sports, Inc. v. Melville Corp.*,
   888 F.2d 609 (9th Cir. 1989) ................................................................. 9

*W. Mining Council v. Watt*,
   643 F.2d 618 (9th Cir. 1981) ............................................................... 13

*Wal-Mart Stores, Inc. v. Samara Bros.*,
   529 U.S. 205 (2000) ................................................................... 17, 25, 26

- 6 -

*Walker & Zanger, Inc. v. Paragon Indus.*,
    549 F. Supp. 2d 1168 (N.D. Cal. 2007)...........................................................14, 28

**FEDERAL STATUTES AND RULES**

15 U.S.C.
    § 1127 ...................................................................................................................13

Federal Rule of Civil Procedure
    Rule 11(b) ...........................................................................................................12
    Rule 12(b)(6) ............................................................................................11, 13, 28

**MISCELLANEOUS**

37 C.F.R. § 2.52....................................................................................................24

1 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR
    COMPETITION § 8:5.50 (5th ed. 2020) .............................................................9, 14

Trademark Manual of Examining Procedure
    §1202.02(c) – (c)(i).............................................................................................24

## I.   **INTRODUCTION**

As they have previously done in multiple lawsuits (including in this District), Plaintiffs attempt here to assert overly broad, vague, generic, and ever-changing rights in unregistered trade dress purportedly associated with their Squishmallows product line.  Plaintiffs acknowledged in their initial Complaint that they have difficulty articulating the contours of their supposed unregistered rights.  ECF No. 1, ¶26 (conceding their alleged trade dress "is not easily reduced to writing").

After Defendant Build-A-Bear Workshop, Inc. ("Build-A-Bear") moved to dismiss Plaintiffs' original Complaint and after another court in this District dismissed parallel trade dress claims by Plaintiffs against another toy manufacturer, Plaintiffs made minor, insignificant amendments to their claims against Build-A-Bear.  The Amended Complaint is no better, and still entirely fail to articulate a plausible, proper trade dress definition.

Based on Plaintiffs' latest pleading failures, the Court should dismiss with prejudice Plaintiffs' claims against Build-A-Bear for trade dress infringement under the Lanham Act and California common law (Counts I and II) as well as Plaintiffs' California statutory and common law claims for unfair competition (Counts IV and V) to the extent premised on the alleged unregistered trade dress rights.  The Court should also dismiss Plaintiffs' copyright claim (Count III) for its pleading deficiencies.[1]

---

[1] Prior to Plaintiffs' filing of the instant lawsuit, Build-A-Bear filed a declaratory judgment lawsuit against Plaintiffs in the United States District Court for the Eastern District of Missouri, in which Build-A-Bear seeks declarations regarding Plaintiffs' lack of valid rights under the Lanham Act relating to their Squishmallows product line, and that Build-A-Bear does not, in any event, infringe any asserted rights of Plaintiffs. *See* Exhibit N, *Build-A-Bear Workshop, Inc. v. Kelly Toys Holdings, LLC, et al.*, Case No. 24-cv-00211 (E.D. Mo.), ECF No. 1.  Build-A-Bear has also filed a Motion to Enjoin Plaintiffs from proceeding in this later-filed case. *See id.*, ECF Nos. 11-12.  By filing this Motion to Dismiss, Build-A-Bear does not waive its position that its first-filed case in the Eastern District of Missouri federal court should proceed while Plaintiffs are enjoined from proceeding with this later-filed case.

Trade dress generally refers to the non-functional physical detail and design of a product that clearly distinguishes it from the products of others, such that consumers identify these products as coming from a single, exclusive source (referred to as "secondary meaning" in the marketplace). *See Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613-615 (9th Cir. 1989). Plaintiffs bear the burden to sufficiently plead not only non-functionality and secondary meaning, but also to clearly and specifically define their claimed trade dress elements. *See Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769 PSG (SSx), 2015 WL 12731929, at *3 (C.D. Cal. May 8, 2015) ("A plaintiff should clearly articulate its claimed trade dress to give a defendant sufficient notice."); *Greenberg v. Johnston*, No. CV-14-046505-MWF (VBKx), 2014 WL 12586252, at *2 (C.D. Cal. Oct. 22, 2014) (same).

Plaintiffs' Lanham Act and state law claims fail to articulate a plausible, proper definition of their asserted trade dress. Over the course of multiple lawsuits attempting to claim unregistered trade dress rights in their Squishmallows product line, Plaintiffs have now concocted ***fourteen*** different descriptions of those purported (but ultimately illusory) rights, including ***five*** different versions just against Build-A-Bear in the past two months (two iterations in this Court plus three different iterations in Florida state court).[2]

Relevant here, "[w]hen it is claimed that the trade dress is inherent in an entire series or line of products, the proponent faces the 'particularly difficult challenge' of proving the validity of a broadly defined trade dress which is ***common to all items in the series or line***." 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §8:5.50 (5th ed. 2020) ("McCarthy") (emphasis added). Plaintiffs' Squishmallows product line includes thousands of different-looking designs, varying widely in shape, color, facial features, and overall appearance. Even

---

[2] Plaintiffs have not even tried to register their purported trade dress (Decl., ¶5), because they would not be able to adequately describe it to the Trademark Office, further confirming its illusory nature.

the small number of Plaintiffs' 3,000+ Squishmallows designs cherry-picked from Plaintiffs' Amended Complaint vary widely and do not share all asserted elements of Plaintiffs' claimed trade dress (to the extent such elements are even decipherable):



ECF No. 25, ¶¶23, 56.

As seen in Plaintiffs' filings over time against other plush toy manufacturers (of which this Court can take judicial notice), Plaintiffs' Squishmallows product line has no recognizable commonality in aesthetic features:



Exhibit A.[3]

Because Plaintiffs' Squishmallows products differ so greatly, Plaintiffs' descriptions of their purported rights are similarly varying, overbroad, vague, and inconsistent, including generic and functional features commonly found in plush products for many years before Squishmallows' existence.  For example, Plaintiffs claim trade dress rights in "embroidered facial features, such as eyes, nostrils, and/or mouths" – which have been in plush toys for decades – as well as "non-monochrome coloring" – which is simply a way of saying "multiple colors", another basic plush toy feature used for decades by many different companies (of which this Court can also take judicial notice).  In short, Plaintiffs' descriptions fail to provide Build-A-Bear with sufficient notice of what their purported, unregistered trade dress rights actually are, especially when compared to what plush toy makers have been selling for years.

Courts within this District have previously granted Rule 12(b)(6) motions to dismiss similarly overbroad, unspecific claims of unregistered trade dress asserted in the Squishmallows product line against Dan-Dee and Zuru, two plush toy manufacturers.  *See Kellytoy USA, Inc. et al. v. Dan-Dee Int'l, Ltd. et al.*, Case No. 2:18-cv-05399-JAK ("*Kellytoy v. Dan-Dee*"); *see also Kelly Toys Holdings, LLC, et al v. Zuru, LLC*, Case No. 2:23-cv-09255-MCS-AGR ("*Kelly Toys v. Zuru*").

In its Order in *Kellytoy v. Dan-Dee*, the Court called out that: "in light of the substantial differences among the designs of the products in the Squishmallows line, the images included in the [First Amended Complaint] do not provide the level of clarity about the nature and scope of the claimed trade dress as is required by the caselaw."  *See* Exhibit I, ECF No. 39, p. 9.  After further pleading, in which yet another overbroad claim of trade dress was asserted (and then subject to another motion to dismiss), the *Kellytoy v. Dan-Dee* case was voluntarily dismissed, and Dan-

---

[3] All exhibit references are to Build-A-Bear's Request for Judicial Notice.

Dee continued to sell the plush toy product at issue.  *See id.*, ECF Nos. 46, 57, 71; *see also* <u>Exhibit F</u>.

More recently, in its Order in *Kelly Toys v. Zuru*, the Court criticized Plaintiffs' trade dress description bearing "simplified Asian style Kawaii faces" for invoking "questionable orientalist tropes without doing much to describe the asserted trade dress" and dismissed Plaintiffs' complaint without prejudice, but expressly warning Plaintiffs "that a subsequent pleading containing another ***ill-defined*** trade dress description may result in a final dismissal of the trade dress claims." <u>Exhibit K</u>, ECF No. 32, pp. 5, 7 (emphasis added).[4] Plaintiffs have since amended their Complaint in *Kelly Toys v. Zuru,* asserting a revised trade dress description and mirroring the trade dress description now asserted here in Plaintiffs' Amended Complaint against Build-A-Bear.  *Compare* ECF No. 25, pp. 9-17 *with* <u>Exhibit K</u>, ECF No. 34, pp. 9-17. Plaintiffs' new descriptions merely add two words ("oval" and "fanciful") and remove two words ("Asian style") to create their "new" trade dress description. *Compare* <u>Exhibit K</u>, ECF No. 1, ¶24 *with id.*, ECF No. 34, pp. 9, 11.  Because these minor, insignificant changes did not cure the fundamental flaws in Plaintiffs' trade dress description, Zuru has moved to dismiss Plaintiffs' Amended Complaint.  *See id.*, ECF No. 35.

As noted, over the last five years, Plaintiffs have repeatedly retooled their own descriptions of their alleged trade dress rights, with at least fourteen different descriptions proffered to date.  This history, combined with Plaintiffs' failure to even attempt to register their purported trade dress, confirms that Plaintiffs cannot clearly identify their own purported rights. *See* Decl., ¶5. If Plaintiffs could have articulated their rights in a concise, clear fashion, they would have already done so.  They have not and cannot, ***because any such purported rights are illusory***.

---

[4] Judge Scarsi also warned Plaintiffs could only file an Amended Complaint "if they can do so consistent with Federal Rule of Civil Procedure 11(b)." <u>Exhibit K</u>, ECF No. 32, p. 7.

Reduced to its simplest form, Plaintiffs are absurdly attempting to convince this Court that they have exclusive intellectual property rights over cute plush toys. Plaintiffs are not entitled to exclusivity over such ubiquitous features. Because Plaintiffs cannot sufficiently describe their purported, unregistered trade dress rights, their trade dress claims (and all other claims predicated thereon) fail as a matter of law and should be dismissed with prejudice.

## II.   APPLICABLE LAW

### A.   Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Rule 12(b)(6) motion may be granted when the complaint lacks a cognizable legal theory or sufficient facts to support one. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit[,] allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008), or "legal conclusions ... cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

### B.   Trade Dress

The Lanham Act protects valid and subsisting trade dress from infringing uses by others where said trade dress was (at the time of its first use), and continues to be, used in commerce for source identification. *See* 15 U.S.C. § 1127. Trade dress "involves the total image of a product and 'may include features such as size, shape, color, color combinations, texture, or graphics.'" *Sugarfina, Inc. v. Sweet Pete's LLC*, No. 17-CV-4456-RSWL-JEM, 2017 WL 4271133, at *4 (C.D. Cal. Sept. 25, 2017) (quoting *Vision Sports, Inc.*, 888 F.2d at 613).

A plaintiff bears the burden to sufficiently plead and adequately define the elements of its claimed trade dress because, without a clearly articulated and adequate definition, a defendant is not properly put on notice of what does or does not infringe or even what the elements are to analyze validity and infringement. *See Sleep Sci. Partners v. Lieberman*, No. 09-04200 CW, 2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010). California trade dress and unfair competition law track the same requirements for pleading trade dress as the Lanham Act. *See Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) (state common law and statutory unfair competition claims "are 'substantially congruent' to claims made under the Lanham Act"); *Benebone LLC v. Pet Qwerks, Inc.*, No. 820CV00850ABAFMX, 2020 WL 8732321, at *5 (C.D. Cal. Sept. 3, 2020) ("Trade dress claims under California common law are subject to the same analysis as federal trade dress claims.").

The reason this is so important is that any ambiguity in the pleading stage can lead to gamesmanship and changing descriptions of the trade dress by a plaintiff as the litigation proceeds. *See* McCARTHY § 8:3 ("there is no reason why the plaintiff cannot define a list of elements … Only then can the court and the parties coherently define exactly what the trade dress consists of and determine whether that trade dress is valid and if what the accused is doing is an infringement"). Clear definitions of unregistered trade dress are necessary to make sure the marketplace is operating with full information, allowing proper competition. *See Walker & Zanger, Inc. v. Paragon Indus.*, 549 F. Supp. 2d 1168, 1175-76 (N.D. Cal. 2007) ("trade dress claims raise a potent risk that relief will impermissibly afford a level of 'protection that would hamper efforts to market competitive goods'").

Where, as here, a plaintiff claims trade dress over an entire product line, "the proponent faces the 'particularly difficult challenge' of proving the validity of a broadly defined trade dress which is ***common to all items in the series or line***." McCARTHY § 8:5.50 (emphasis added); *see also Interactive Health LLC v. King Kong United States, Inc.*, No. CV 06-1902-VBF(PLAx), 2008 WL 11337393, at *2

- 14 -

(C.D. Cal. Mar. 6, 2008) ("[W]hen a plaintiff seeks protection for an entire line of products, the plaintiff must demonstrate the trade dress signifies an overall look that is **consistent throughout the entire line**.") (emphasis added); *Crafty Prods. v. Michaels Cos.*, 389 F. Supp. 3d 876, 882 (S.D. Cal. 2019) ("To grant such far-reaching, undefined trade dress protection [across a product line without a consistent look] would unfairly allow inventors to claim any broad design and would leave no room for competition.").

## III.   THE SQUISHMALLOWS PRODUCTS

In their Amended Complaint, Plaintiffs claim to be the sole and exclusive owners of unregistered trade dress rights in their entire Squishmallows product line. *See* ECF No. 25, ¶¶24, 56.  However, Plaintiffs' definitions of those rights have not only changed greatly over the past five years – they have even changed as applied to Build-A-Bear.  Indeed, in just a matter of months, Plaintiffs have asserted a total of five (5) different trade dress descriptions against Build-A-Bear in this Court (and in Florida state court) over the very same products, among the fourteen varying descriptions over the years.  Plaintiffs' most recent trade dress assertion against Build-A-Bear (with changes from its first description asserted against Build-A-Bear) is set forth below:[5]

> a.   substantially egg/bell/oval shaped plush toys depicting various similarly shaped **abstract**/fanciful renditions of animals/characters
>
> b.   simplified ~~Asian style~~ Kawaii faces with repeating and complementary rounded/oval shaped graphics depicting features on the characters themselves (such as eyes, snouts and bellies)

---

[5] All fourteen descriptions are set forth in Build-A-Bear's initial Motion to Dismiss at ECF No. 21, pp. 13-19, in <u>Exhibits I-M</u>, and compiled in <u>Exhibit O</u>, wherein these descriptions are individually and collectively referred to as the "Claimed Squishmallows Trade Dress".

and which conform to and support the overall egg/bell/~~oval~~ shape of the toys

    c.    embroidered facial features, such as nostrils, eyes and/or mouths

    d.    distinctive contrasting and non-monochrome coloring

    e.    short-pile velvety velour-like textured exterior with a light and silky memory foam-like stuffing providing an extremely soft and squeezable marshmallow feel

*Compare* ECF No. 25, pp. 9-17 *with* ECF No. 1, ¶26.

These varying, but more importantly, inadequate descriptions of the trade dress (including the most recent description asserted here) fail to provide fair notice to competitors of Plaintiffs' claimed trade dress rights. As just one example, what began as Plaintiffs' asserted rights in "embroidered anime-inspired minimalist, whimsical facial features" (Exhibit I, ECF No. 16, ¶23), then became "Asian-style Kawaii faces" with "embroidered facial features" (Exhibit L, Verified *Ex Parte* Emergency Motion for Temporary Injunction, p. 25), and now is "simplified Kawaii faces with repeating and complementary rounded/oval shaped graphics depicting features on the characters themselves (such as eyes, snouts and bellies) and which conform to and support the overall egg/bell shape of the toys".  ECF No. 25, p. 11.  If Plaintiffs cannot clearly define their own asserted unregistered trade dress rights (as they even concede they have difficulty doing), it is impossible for competitors like Build-A-Bear to know what those asserted rights are and guide their actions accordingly.  Just as Plaintiffs' fourteen trade dress descriptions fail to provide sufficient notice to Build-A-Bear, Plaintiffs' most recently revised trade dress description (ECF No. 25, pp. 9-17) also fails to provide Build-A-Bear with sufficient notice under the law.

No matter how creative Plaintiffs' wordsmithing endeavors are, the various vague features Plaintiffs have claimed as components of their asserted trade dress are not all consistently present throughout the entire Squishmallows product line (which, according to Plaintiffs, has over 3,000 plush characters) (ECF No. 25, ¶56),

undermining the assertion of a total product image recognizable by the consuming public as an identifier of a ***single source*** rather than an identifier of certain products. *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211 (2000) (internal quotations and citation omitted) (discussing that trade dress should "identify the source of the product rather than the product itself"); *Interactive Health LLC*, 2008 WL 11337393, at *2 ("when a plaintiff seeks protection for an entire line of products, the plaintiff must demonstrate the trade dress signifies an overall look that is consistent throughout the entire line"); *Crafty Prods.*, 389 F. Supp. 3d at 882 (same). The continuously varying descriptions fall well short of providing Build-A-Bear with sufficient notice under the law.  *See* <u>Exhibits A–D</u>, <u>I–M</u>, and <u>O</u>; ECF No. 25, ¶¶23-26, 47, 52, 96 (referring to Squishmallows features not as source identifiers but as "designs" or "product designs").  As shown below, no consistent overall look and feel or stable visual appearance can easily be discerned from a review of just a few of Plaintiffs' Squishmallows products found in their Amended Complaint, and in public filings of which this Court can take judicial notice:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1.   *Significant Differences Exist Among the Squishmallows Products in Plaintiffs' Amended Complaint*





- 18 -

1    *See, e.g.*, ECF No. 25, pp. 2-4, 8-9, 11, 14-16, 18, 21, 23, 25, 27-29.

2         In the examples above, the Squishmallow snouts are all different (*e.g.*, circular,

3    oval, triangular, and "comma" shaped), with some containing a nose attached to a

4    curved mouth (dogs, panda, mouse, lion), one containing a nose and separate mouth

5    (baby yoda), some containing nostrils only (unicorn, camouflage, flying pig, giraffe,

6    zebra, bull), some having beaks (birds), and some lacking a snout altogether (burger,

7    mushroom, apple, clown fish). *See id.*, pp. 2, 8, 19, 23, 25. One cannot discern

8    "distinctive contrasting and non-monochrome coloring" in the depicted toys, which

9    run the gamut from various shades of black, brown, tan, white, pink, purple, blue and

10   gray, and including colors and prints found in nature, such as grey (mouse), orange

11   and white (clown fish), green (frog), pink (pig), and zebra and giraffe prints for the

12   corresponding animals. *See id.*, pp. 2, 8, 21, 23, 27. Indeed, some are one color (*i.e.*,

13   monochrome), such as the blue loch ness monster and the pink shrimp. *See id.*, p. 19.

14   Even the embroidered, purportedly "Kawaii" eyes have no discernible consistency:

15   some eyes have eyelashes (the claw machine and flying pig), some have "closed"

16   eyes (unicorn, pumpkin spice latte, rainbow mane lion, and blue bird), and some are

17   winking (*i.e.*, one eye open and one eye closed) (mushroom, elephant, and avocado).

18   *See id.*, pp. 8, 19, 25. Some of the toys have contrasting, semi-circular "bellies,"

19   whereas others do not, and some have a contrasting irregularly-shaped panel covering

20   the belly of the toy (panda, baby yoda). *See id.*, pp. 8, 23. The various "appendages"

21   also differ between the toys depicted above, with horns, manes, and differently

22   shaped ears placed on different parts of the toys (floppy, round, folded, not folded,

23   or none at all). Multiple toys lack appendages (frog, mushroom, burger). *See id.*,

24   pp. 19, 23, 21.

25        Plaintiffs' Squishmallows products do not all have "rounded/oval shaped

26   graphics depicting features of the characters themselves (such as eyes, snouts and

27

28

bellies) and which conform to and support the overall egg/bell shape of the toys".[6] *Id.*, p. 11. Instead, Plaintiffs' Squishmallows products have all manner of features and graphics that are linear (panda, baby yoda, burger, shrimp, and claw machine), squiggled (clownfish lines, elephant trunk, and camouflage lines), or pointed (fox facial features), while others have details not "Kawaii" in style (British-style octopus with monocle, moustache, and top hat). *See id.*, pp. 2, 8, 14, 19, 23. Moreover, as part of Plaintiffs' continued failure to describe their trade dress with sufficient specificity, Plaintiffs inject further confusion and ambiguity by contending, for example, that their "Kawaii" faces "deviated from the pure Kawaii design" and exemplify a "simplified" version, whatever that means. *See id.*, ¶¶34-35. Further, the images show Squishmallows products with entirely different shapes (pink stingray with triangle fins, rounded octopus with tentacles); non-rounded facial features (panda with heart-shaped eyes, lion with closed eyes, claw machine character with closed eyes); monochrome or indistinct coloring (octopus, panda, mouse, loch ness monster); and different length fabric (lion, bull). *See id.*, pp. 8, 19.

> 2. *Significant Differences Exist Among the Squishmallows Products in the Exhibits Attached to Build-A-Bear's Request for Judicial Notice*

Digging in further, the images below, which Plaintiffs (conveniently) failed to include but of which this Court can take judicial notice, show an even greater variance and lack of commonality of each element of the Claimed Squishmallows Trade Dress across the product line. For example, details that are not "Kawaii" style (jack-o-lantern), shapes that are not "egg/bell/oval" (clownfish and baby yoda – triangular; Frankenstein and marshmallow – square; nutcracker – figure 8 shaped).

---

[6] It is also unclear what "conform[s] to and support[s]" even means but, in any event, the features and graphics are widely variable.









*See* Exhibits A – D and J (ECF No. 66, pp. 7, 9); Request for Judicial Notice, Item 3.

In sum, Plaintiffs claim a variously shaped plush toy with *a* face and *a* color—a description encompassing most plush toys.  Plaintiffs' improper attempt to secure a far-reaching monopoly over the toy industry, vis-à-vis the Claimed Squishmallows Trade Dress (including the most recent description asserted against Build-A-Bear

here), is unsupported by federal or state trade dress and unfair competition law and should be emphatically rejected by this Court.

## IV.   ARGUMENT

### A.   This Court Should Dismiss, With Prejudice, Plaintiffs' Trade Dress Claims (Including Plaintiffs' Unfair Competition Claims Based on Trade Dress) Because Plaintiffs Do Not and Cannot Clearly and Adequately Describe the Claimed Squishmallows Trade Dress in Order to Provide Build-A-Bear with Sufficient Notice.

Plaintiffs' Amended Complaint (ECF No. 25) asserts unregistered trade dress rights over the *entire* Squishmallows product line comprising thousands of different designs. ECF No. 25, ¶56. Plaintiffs are effectively trying to exclude Build-A-Bear from making cute, soft plush toys, even though such toys (including toys made by Build-A-Bear for decades) have existed for years before Squishmallows, including, among many others, plush toys sold by Dan-Dee, Squishable, and KidRobot. *See, e.g.*, Exhibits G–H. Trade dress law does not support Plaintiffs' improper monopolistic efforts, nor does it support generic trade dress. Plaintiffs' vague, overbroad, and ever-changing trade dress descriptions fail to set forth a plausible claim. Therefore, this Court should dismiss Plaintiffs' Lanham Act and state law trade dress claims, as well as Plaintiffs' unfair competition claims to the extent premised on their purported trade dress.

Plaintiffs' Amended Complaint against Build-A-Bear in this Court and their filings against Build-A-Bear in the Florida state court, along with the various other Complaints and filings against third parties in this and other courts, evidence Plaintiffs' attempts to redefine its trade dress as they continue to face legal challenges from their adversaries. Indeed, the widely varying 14 descriptions show Plaintiffs' inability to provide Build-A-Bear (or any defendant for that matter) with legally sufficient notice of their asserted trade dress – because, as Plaintiffs previously admitted, they can "not easily reduce[] to writing" the Claimed Squishmallows Trade Dress. ECF No. 1, ¶26.

Further, the 3,000+ products in the entire Squishmallows product line have features that vary widely and thus are inconsistent with the Claimed Squishmallows Trade Dress, including the current description set forth on pages 9-17 of the Amended Complaint against Build-A-Bear. Some products have Kawaii style faces, some do not.[7] Some have noses, some do not. Some are non-monochrome, some are not. Some are brightly colored, some are not. Some are oval, some are not. Some have appendages, some do not. Some have bellies, some do not. *See* ECF No. 25, pp. 2-4, 8-9, 11, 14-16, 18-19, 21, 23, 25, 27-29; *see also* Exhibits A-D.

Plaintiffs cannot claim trade dress rights over thousands (and indeed a potentially unlimited number) of shapes, colors, patterns, textures, and facial features on a plush or stuffed toy, especially where, as here, the claimed elements existed in numerous products long before the creation of the Squishmallows product and remain ubiquitous today. *See* Exhibits G-H. Plaintiffs ostensibly admit that the Claimed Squishmallows Trade Dress is ***still*** subject to change. ECF No. 25, ¶48 ("***in particular but without limitation*** its shapes, colors, textures and graphics—serve as a distinctive source identifier to the consuming public"). This Court has previously deemed this type of language to be legally insufficient. *See Sugarfina*, 2017 WL 4271133, at *4 (dismissing the plaintiff's trade dress claim in part because plaintiff alleged a list of elements that its trade dress ***may*** include); *Sleep Sci. Partners*, 2010 WL 1881770, at *3 ("Plaintiff employs language suggesting that these components are only some among many, which raises a question of whether it intends to redefine its trade dress at a future stage of litigation.").

By changing the Claimed Squishmallows Trade Dress description now fourteen times, Plaintiffs have proven the futility of attempting to craft one complete

---

[7] Plaintiffs attempt to define "Kawaii" as "employ[ing] simple features to create a cute, lovable, or innocent look" with non-limiting "example[s]". ECF No. 25, ¶33. "Cute", "lovable" and "innocent" are not adequate trade dress descriptions, and Plaintiffs have complicated their description further by asserting their products are not "pure Kawaii", which itself is undefined. ECF No. 25, ¶¶34-35.

description of the trade dress elements because the Squishmallows designs in the product line take the form of numerous varying features. *See* Exhibits A-D. Indeed, there is no common feature across the entire line and Plaintiffs cannot obtain intellectual property rights over plush toys generally. *See Shelbyco Inc. v. Western Trimming Corp.*, No. 2:97-CV-196C, 1997 WL 377982, at *4 (D. Utah. May 12, 1997) ("[T]he only consistent feature in [plaintiff's] trade dress is the display of commonplace, ordinary shapes in various colors.").

Plaintiffs' inability to formulate a list of the elements that make up its trade dress also makes it impossible for Plaintiffs to provide "sufficient notice of [their] trade dress claim." *Sugarfina*, No. 17-CV-4456-RSWL-JEM, 2017 WL 4271133, at *4. Moreover, although "image[s] of the trade dress … greatly assist[] courts in clarifying what design or mark a plaintiff seeks to protect," in this case, images of Plaintiffs' Claimed Squishmallows Trade Dress seen in Plaintiffs' Amended Complaint (*i.e.*, the Squishmallows products themselves) only create further confusion because the images themselves clearly do not have a consistent overall look. *See Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SACV150246DOCDFMX, 2016 WL 6138416, at *3 (C.D. Cal. May 6, 2016).

In tacit recognition of the ever-varying features of the Squishmallows product line, Plaintiffs have never attempted to obtain federal registration of the Claimed Squishmallows Trade Dress (*see* Decl., ¶5), and for good reason – it is highly doubtful Plaintiffs could ever come up with any drawing of claimed elements of the Squishmallows product line that could properly satisfy regulatory notice requirements. *See* 37 C.F.R. §2.52; Trademark Manual of Examining Procedure §1202.02(c) – (c)(i). Because there are no common source-identifying features across the Squishmallows product line, any attempt to represent them visually in an application with the Trademark Office would devolve into a collection of random dashed lines. If a claimed trade dress is so abstract and so varied across a product line that it could not be feasibly depicted in a federal registration, it must be rejected.

Plaintiffs' current description of its asserted trade dress is amorphous, vague, and inconsistent with its Squishmallows product line, as have been the other thirteen descriptions asserted in the last five years (including five different descriptions asserted just against Build-A-Bear in a matter of a few months!).  This Court should therefore dismiss with prejudice Plaintiffs' trade dress claims (and related unfair competition claims) for failure to state a claim.

**B.     This Court Should Dismiss, With Prejudice, Plaintiffs' Trade Dress Claims (Including Plaintiffs' Unfair Competition Claims Based on Trade Dress) Because, as Pled, The Claimed Squishmallows Trade Dress Is Not Protectable.**

Additionally, the Claimed Squishmallows Trade Dress – including the description asserted here on pages 9-17 of the Complaint (one of Plaintiffs' fourteen different descriptions) – is not protectable in the first instance.  This is because: (1) Plaintiffs have failed to adequately plead facts supporting secondary meaning of the Claimed Squishmallows Trade Dress; and (2) the descriptions of the Claimed Squishmallows Trade Dress are so generic and commonplace that it cannot be protected under the law even if secondary meaning in the market could be proven.

As background, some trade dress is considered "inherently distinctive," in that their "intrinsic nature serves to identify a particular source."  *Wal–mart v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000).  Trade dress that is not inherently distinctive may nevertheless acquire distinctiveness (*i.e.*, "secondary meaning") over time if the public forms a sufficiently strong "learned association" between the trade dress and the source or brand it is intended to signify.  *See Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 824 (9th Cir. 1993) (suggesting that a plaintiff could create a secondary meaning by "urging consumers to look for" the specific differentiating features of the claimed trade dress).

However, "[t]he shape or design of a product ***cannot*** intrinsically identify the product's source in the way that certain brand names, logos, or even product

packaging may." *Opulent Treasures, Inc. v. Ya Ya Creations, Inc.*, No. 222CV02616SSSJCX, 2023 WL 4681565, at *3 (C.D. Cal. July 13, 2023) (emphasis added). Instead, a product's design may ***only*** be protected as trade dress if it has acquired distinctiveness. *See Wal–mart*, 529 U.S. at 213-14, 216. Moreover, evidence of past sales, alone, is irrelevant unless it is proven that the sales were actually driven by Plaintiffs' trade dress. *See, e.g.*, *Kellytoy Worldwide, Inc. v. TY, Inc.*, No. 20 C 748, 2020 WL 5026255, at *3 (N.D. Ill. Aug. 25, 2020) ("popularity and engagement with a product do not necessarily suggest a connection between the product and its source").

Here, Plaintiffs admit in their Amended Complaint that the Claimed Squishmallows Trade Dress encompasses "product design" but then only plead as facts its efforts to market the product and its purported sales volume as supporting secondary meaning. *See, e.g.*, ECF No. 25, ¶¶23-26, 47, 52, 84, 96. These facts, as pled, are insufficient to plead secondary meaning in this product design.

Further, this Court has recognized that trade dress protection is not meant to extend to broad, imprecisely defined, and generic product designs because of "the risk that jurors will interpret the same trade dress differently, the possibility that jurors or courts will be unable to determine functionality or secondary meaning, the likely overbreadth of the trade dress claim, and the difficulty in crafting narrowly-tailored injunctive relief." *R & A Synergy LLC v. Spanx, Inc.*, No. 2:17-CV-09147-SVW-AS, 2019 WL 4390564, at *4 (C.D. Cal. May 1, 2019). "For these reasons, 'generic product designs are unprotectible [sic] ***even upon*** a showing of secondary meaning.'" *Id.* (quoting *Walker*, 549 F. Supp. 2d. at 1174) (emphasis added).

"Genericness" can occur "if the definition of a product design is overbroad or too generalized" or "if the product design is so common in the industry that it cannot be said to identify a particular source." *R & A Synergy LLC*, 2019 WL 4390564, at *4; *see id.* (determining that plaintiff's trade dress was generic because the definition of its trade dress product design was "far too overbroad and generalized" where it

"[did] not describe[] any particular color, shape, fabric, or arrangement of materials … with sufficient specificity"); *see also SCG Characters LLC v. Telebrands Corp.*, No. CV1500374DDPAGRX, 2015 WL 4624200, at *7 (C.D. Cal. Aug. 3, 2015) ("For example, the elements of 'brightly colored fur' and 'exaggerated anatomical features' should be more clearly described.").

In this case, Plaintiffs' description of its trade dress on pages 9-17 of the Amended Complaint (as well as Plaintiffs' other thirteen descriptions discussed above) reveals a vague, overbroad, and outright generic purported trade dress, as well as a product design commonplace in the plush toy industry for decades (or longer), and is therefore unworthy of trade dress protection irrespective of acquired distinctiveness, if any.  Plaintiffs' current trade dress description, which merely adds two words to and removes two words from the previously asserted trade dress description in *Kelly Toys v. Zuru* that another court in this District has called "ill-defined" (Exhibit K, ECF No. 32, at p. 7) and nearly identical to the description asserted in Plaintiffs' initial Complaint here.  Plaintiffs fail to truly specify elements consistently appearing in its product line, such as the particular color, shape, fabric, and facial features of their product designs.   Generic references like "non-monochrome coloring" (*i.e.*, multiple colors), "embroidered facial features" (*i.e.*, any sewn facial features), and "short-pile velvety velour-like textured exterior" with "an extremely soft and squeezable marshmallow feel" (*i.e.*, short fabric outside, squeezable material inside) are "far too overbroad and generalized" because they do "not describe[] any particular color, shape, fabric, or arrangement of materials … with sufficient specificity".  *R & A Synergy LLC*, 2019 WL 4390564, at *4.

The Ninth Circuit has confirmed that merely assembling unprotectable, generalized elements in a predictable way is nothing more than "semantic trickery to say that there is still some sort of separate 'overall appearance'" that is protectable. *Leatherman Tool Grp., Inc. v. Cooper Indus.*, 199 F.3d 1009, 1013 (9th Cir. 1999).

- 27 -

The trade dress claims set forth in the Amended Complaint, recycled from trade dress claims already rejected by the *Zuru* Court just weeks ago in this same District, are "empty generalities" and cannot be protected under the law, *Walker*, 549 F. Supp. 2d at 1176, and should thus be dismissed, with prejudice.

### C.    The Court Should Dismiss, With Prejudice, Plaintiffs' Copyright Claim for Failure to Adequately Plead Substantial Similarity.

This Court should similarly dismiss, with prejudice, Plaintiffs' copyright claim under Rule 12(b)(6) because, as a matter of law, the deposit copyright works asserted in Paragraph 51 of Plaintiffs' Amended Complaint and the allegedly infringing Build-A-Bear Skoosherz™ products are not substantially similar. *See Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1064 (C.D. Cal. 2017) ("If after examining the works themselves, th[e] Court determines that there is no substantial similarity, then the plaintiff [] can prove no facts in support of his claim which would entitle him to relief—the standard for dismissal under Rule 12(b)(6).").

As part of a copyright infringement claim, a plaintiff must show copying of constituent, original elements of the work, which includes showing that the copyrighted work(s) and allegedly infringing work(s) are substantially similar in their protected elements. *See Hardwell v. Parker*, No. CV219100DMGPVCX, 2022 WL 16894520, at *3 (C.D. Cal. Aug. 25, 2022); *Marcus*, 279 F. Supp. 3d at 1064.

When examining substantial similarity as a matter of law, courts must apply the extrinsic test which focuses on the "similarities in their objective details in appearance, including but not limited to, the subject matter, shapes, colors, materials, and arrangement of the representations." *C&SM Int'l. v. JollyChic, Inc.*, No. CV183510MWFJEMX, 2019 WL 926328, at *3 (C.D. Cal. Jan. 8, 2019). However, "the court should only determine whether the protectible [sic] elements, standing alone, are substantially similar." *Marcus*, 279 F. Supp. 3d at 1065. "[O]bjective 'facts' and ideas are not copyrightable" and "expressions that are standard, stock, or

common to a particular subject matter or medium are not protectable under copyright law." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). As the Ninth Circuit stated, "[t]h[o]se ideas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them." *Id.* at 813; *see also Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 917 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) ("The key question always is: Are the works substantially similar beyond the fact that they depict the same idea?").

Here, the elements of Plaintiffs' copyrighted frog plush (No. VA0002096026), contain numerous, objective factual elements. For example, it is an objective fact that frogs are generally green and found with protruding eyes on the top of their heads and nostrils at a median point between their eyes. Removing the unprotectable elements, the two works are not substantially similar as a matter of law, as seen in the side-by-side comparison below. Plaintiffs' frog has a tiny mouth, nostrils that are close together, an off-white/beige belly, pink cheeks, an elongated body, and no appendages. In contrast, Build-A-Bear's Skoosherz™ Spring Green Frog has a large mouth extending to the eyes, with nostrils that are far apart, no belly, no cheeks, an orb-shaped body, two webbed appendages, and Build-A-Bear's registered BAB logo mark.[8]  ECF No. 25, ¶106.

| Plaintiffs' Deposit Copy "Frog" | Build-A-Bear's Skoosherz™ Spring Green Frog |
|---|---|
|  |  |

---

[8] Although not necessary to resolve this Motion, Build-A-Bear's accused Skoosherz™ Spring Green Frog and Pink Axolotl are notably based on Build-A-Bear's original designs. *See* Exhibit N, ECF No. 1, ¶21.

Similarly, comparing Plaintiffs' Copyright No. VA0002346938 to Build-A-Bear's Skoosherz™ Pink Axolotl, Plaintiffs' plush has a dark pink/purple color, a small, double comma mouth, circular eyes, a white belly, fluff with multicolored metallic accents extending from the top of the plush, and an elongated body. Build-A-Bear's Skoosherz™ Axolotl, on the other hand, is light pink, has a larger, singled-curved smile extending upwards, oval-shaped eyes, no belly, no fluff with multicolored accents, two appendages with Build-A-Bear's registered logo mark, and two pairs of three distinct, darker-colored, appendages extending from the top of the plush (like the axolotl itself).  ECF No. 25, ¶106.  The only "commonality" is they are both axolotls (a type of amphibian).

| Plaintiffs' Deposit Copy "Axolotl" | Build-A-Bear's Skoosherz™ Pink Axolotl |
|---|---|
|  | |

Plaintiffs' copyrighted works and Build-A-Bear's Skoosherz™ Spring Green Frog and Pink Axolotl are not substantially similar as a matter of law.

**D.    The Court Should Dismiss Plaintiffs' Complaint With Prejudice.**

This Court should also dismiss Plaintiffs' claims with prejudice because Plaintiffs have repeatedly failed to cure the deficiencies in their Complaint, amendment now would be futile, and Build-A-Bear would suffer undue prejudice by having to continue to expend resources fighting legally insufficient and meritless claims.  The Ninth Circuit has expressly recognized that leave to amend is not

mandatory. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003).  Repeated failure to cure pleading deficiencies, futility of amendment, and undue prejudice to the opposing party are among the factors to be considered by the Court in evaluating whether to dismiss without leave to amend, *i.e.*, with prejudice.  *See id.* at 1052.

Here Plaintiffs have taken ***fourteen*** bites at the apple, repeatedly struggling to describe their purported, unregistered trade dress, and repeatedly failing to find a description that adequately identifies shared, unique features across the Squishmallows product line.  Allowing Plaintiffs to concoct a fifteenth trade dress description will not cure Plaintiffs' fundamental legal defects and would be "an exercise in futility." *Kizler v. Budget Fin. Co.*, No. CV 5:20-0296-DOC-KK, 2020 WL 4037212, at *3 (C.D. Cal. Apr. 1, 2020); *see also Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."); *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981) (affirming dismissal with prejudice of first amended complaint "as verbose, confusing and conclusory as the initial complaint"); *Hawkins v. Thomas*, No. EDCV 09-1862 JST SS, 2012 WL 1944828, at *1 (C.D. Cal. May 29, 2012) ("It is appropriate to dismiss a claim without leave to amend when (1) the plaintiff has already had opportunities to amend his complaint and (2) further amendment would be futile.").

Plaintiffs' asserted copyrights and the two accused Build-A-Bear Skooserz™ products cannot change, and there is therefore no way for Plaintiffs to "correct" the lack of substantial similarity as a matter of law between their copyrights and the accused products. *See Carlini v. Paramount Pictures Corp.*, No. 2:19-CV-08306-SB-RAP, 2021 WL 911684, at *14 (C.D. Cal. Feb. 2, 2021), *aff'd,* No. 21-55213, 2022 WL 614044 (9th Cir. Mar. 2, 2022) ("Because the Court finds no substantial similarity between the works as a matter of law, any amendment would be futile.");

*Pretty in Plastic, Inc. v. Bunn*, 793 Fed. Appx. 593, 594 (9th Cir. 2020) (affirming the district court's dismissal with prejudice because the copyright protection was "at best—'thin,'" given that the work "depict[ed] a unicorn as the mythical creature is often portrayed" and because "there [we]re notable differences between [the works]"); *DuMond v. Reilly*, No. CV 19-8922-GW-AGRX, 2021 WL 4772986, at *24 (C.D. Cal. Jan. 8, 2021) (dismissing first amended complaint with prejudice where plaintiff "could not demonstrate the substantial similarity necessary for satisfying the extrinsic test").

Build-A-Bear should not be forced to continue to expend resources, to its undue prejudice, when Plaintiffs cannot plead a legitimate trade dress or copyright claim. *See Eminence Capital*, 316 F.3d at 1052. This Court should dismiss Plaintiffs' Amended Complaint with prejudice.

Respectfully submitted,

DATED: April 4, 2024

**LEWIS RICE LLC**

By: */s/ Michael J. Hickey*

Michael J. Hickey, *Pro Hac Vice*
mhickey@lewisrice.com
Philip J. Mackey, *Pro Hac Vice*
pmackey@lewisrice.com
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
(314) 444-7630
(314) 612-7630 (fax)

**KEESAL, YOUNG & LOGAN**
Ben Suter, CASB No. 107680
ben.suter@kyl.com
Stacey M. Garrett, CASB No. 155319
stacey.garrett@kyl.com
A Professional Corporation
400 Oceangate, Suite 1400
Long Beach, California 90802
(562) 436-2000
(562) 436-7416 (fax)

*Attorneys for Defendant Build-A-Bear Workshop, Inc.*

- 32 -

## <u>WORD COUNT CERTIFICATION</u>

The undersigned, counsel of record for Defendant Build-A-Bear Workshop, Inc., certifies that this brief contains 6,972 words, which complies with the word limit of L.R. 11-6.1.

DATED: April 4, 2024                    **LEWIS RICE LLC**

By:   */s/ Michael J. Hickey*

Michael J. Hickey, *Pro Hac Vice*
mhickey@lewisrice.com
Philip J. Mackey, *Pro Hac Vice*
pmackey@lewisrice.com
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
(314) 444-7630
(314) 612-7630 (fax)