HUESTON HENNIGAN LLP
Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Sourabh Mishra, State Bar No. 305185
smishra@hueston.com
Brittnee A. Bui, State Bar No. 333372
bbui@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:(213) 788-4340
Facsimile:(888) 866-4825

*Attorneys for Plaintiffs Kelly Toys Holdings, LLC;*
*Jazwares, LLC; Kelly Amusement Holdings, LLC;*
*and Jazplus, LLC.*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| KELLY TOYS HOLDINGS, LLC; JAZWARES, LLC; KELLY AMUSEMENT HOLDINGS, LLC; and JAZPLUS, LLC<br><br>Plaintiffs,<br><br>vs.<br><br>BUILD-A-BEAR WORKSHOP, INC.,<br><br>Defendants. | Case No. 2:24-cv-01169-JLS-MAR<br><br>**PLAINTIFFS' OPPOSITION TO BUILD-A-BEAR WORKSHOP, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT UNDER FRCP 12(b)(6)**<br><br>Date:        June 28, 2024<br>Time:       10:30 a.m.<br>Place:      Hon. Josephine L. Staton<br>              Courtroom 8A |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND BACKGROUND ..................................................... 1

II.   LEGAL STANDARD ................................................................................... 4

III.  ARGUMENT ................................................................................................ 4

    A.    Plaintiffs' Description of the Identified Trade Dress is
        Sufficient at the Pleading Stage ............................................................ 4

        1.    There is No Legal Requirement for Plaintiffs to Detail
               Every Element of a Protectable Trade Dress at the
               Pleading Stage .............................................................................. 5

        2.    There is No "Consistent Overall Look" Requirement
               and Any Such Argument Presents Factual Issues Not
               Ripe for the Pleading Stage ......................................................... 6

        3.    Plaintiffs Have Provided Sufficient Notice of Their
               Trade Dress .................................................................................. 9

        4.    Plaintiffs Have Sufficiently Pleaded Facts Showing
               the Squishmallows Trade Dress Has Acquired
               Secondary Meaning .................................................................... 12

    B.    Plaintiffs' Copyright Infringement Claims Sufficiently
        Plead Substantial Similarity Between Plaintiffs' Toys and
        Build-A-Bear's Infringing Toys ........................................................... 15

    C.    If Needed, Plaintiffs Should Be Provided Leave to Amend ............... 17

    D.    Defendants' Motion Should Be Dismissed for Failure to
        Comply with Local Rule 7-3 ............................................................... 18

IV.   CONCLUSION ........................................................................................... 19

PLAINTIFFS' OPPOSITION TO BUILD-A-BEAR WORKSHOP, INC.'S MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**<u>Cases</u>**

*adidas Am., Inc. v. Skechers USA, Inc.,*
890 F.3d 747 (9th Cir. 2018) ............................................................. 3, 12, 13

*Art Attacks Ink. LLC v. MGA Entertainment Inc.,*
581 F.3d 1138 (9th Cir. 2018) ................................................................ 13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................ 4, 19

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................. 4

*Bell v. Harley Davidson Motor Co.,*
539 F. Supp. 2d 1249 (S.D. Cal. 2008) .................................................... 15

*Cal. Scents v. Surco Prods, Inc.,*
28 F. App'x 659 (9th Cir. Jan. 8, 2022) .................................................... 14

*Christian v. Mattel, Inc.,*
286 F.3d 1118 (9th Cir. 2002) ................................................................ 18

*Clicks Billiards, Inc. v. Sixshooters Inc.,*
251 F.3d 1252 (9th Cir. 2001) ........................................................... passim

*Coach, Inc. v. Jay,*
2015 WL 12681378 (C.D. Cal. June 25, 2015) .......................................... 7

*Crafty Prods., Inc. v. Michaels Cos., Inc.,*
389 F. Supp. 3d 876 (S.D. Cal. 2019) ................................................... 8, 11

*Creative Co-Op, Inc. v. Elizabeth Lucas Co.,*
2012 WL 761736 (D. Idaho Mar. 7, 2012) ............................................... 17

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.,*
2015 WL 12731929 (C.D. Cal. May 8, 2015) ................................... 3, 10, 12

*Erickson v. Pardus,*
551 U.S. 89 (2007) .................................................................................... 4

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.,*
654 F.3d 958 (9th Cir. 2011) ............................................................. 12, 13

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000) ............................................................................. 10

*Harris v. Best Buy Stores, L.P.*,
  2015 WL 8527332 (N.D. Cal. Dec. 11, 2015)...................................................... 17

*IMEX Leader, Inc. v. Zest US Wholesale, Inc.*,
  2023 WL 2626968 (C.D. Cal. Feb. 15, 2023) ............................................... 11, 12

*Interactive Health LLC v. King Kong USA, Inc.*,
  2008 WL 11337393 (C.D. Cal. Mar. 6, 2008).................................................. 8, 12

*Kellytoy Worldwide, Inc. v. Hugfun Int'l, Inc.*,
  2019 WL 8064073 (C.D. Cal. Dec. 4, 2019) .......................................................... 9

*Kellytoy Worldwide, Inc. v. Ty, Inc.*,
  2020 WL 5026255 (N.D. Ill. Aug. 25, 2020) ......................................................... 9

*Klauber Bros., Inc. v. City Chic Collective Ltd.*,
  2022 WL 18278400 (C.D. Cal. Dec. 6, 2022)...................................................... 15

*Lepton Labs, LLC v. Walker*,
  55 F. Supp. 3d 1230 (C.D. Cal. 2014) ..........................................................passim

*Levi Strauss & Co. v. Blue Bell, Inc.*,
  632 F.2d 817 (9th Cir. 1980) ............................................................................... 13

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) ............................................................................. 17

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
  922 F.3d 946 (9th Cir. 2019) ............................................................................... 15

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) ............................................................................... 4

*Mercado Latino, Inc. v. Indio Products, Inc.*,
  2017 WL 1356315 (C.D. Cal. Apr. 11, 2017) ....................................................... 3

*Moroccanoil, Inc. v. Marc Anthony Cosmetics, Inc.*,
  57 F. Supp. 3d 1203 (C.D. Cal. 2014) .......................................................... 6, 7, 8

*Opulent Treasures, Inc. v. Ya Ya Creations*,
  682 F. Supp. 3d 815 (C.D. Cal. 2023) ................................................................ 14

PLAINTIFFS' OPPOSITION TO BUILD-A-BEAR WORKSHOP, INC.'S MOTION TO DISMISS

*P & P Imps. LLC v. Johnson Enters., LLC*,
  46 F.4th 953 (9th Cir. 2022) ...................................................................... 13

*Paramount Farms Int'l LLC v. Keenan Farms Inc.*,
  2012 WL 5974169 (C.D. Cal. Nov. 28, 2012) ........................................... 6, 7, 8, 18

*R&A Synergy LLC v. Spanx, Inc.*,
  2019 WL 8137706 (C.D. Cal. Sept. 4, 2019) ............................................ 10

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) ................................................................ 15, 16

*Sleep Sci. Partners v. Lieberman*,
  2010 WL 1881770 (N.D. Cal. May 10, 2010) ........................................... 12

*Smith v. Closet World, Inc.*,
  2016 WL 11002376 (C.D. Cal. Dec. 12, 2016) ......................................... 18

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ................................................................ 19

*Sugarfina, Inc. v. Sweet Pete's LLC*,
  2017 WL 4271133 (C.D. Cal. Sept. 25, 2017) .......................................... 12

*Therabody, Inc. v. DJO, LLC*,
  2022 WL 17360133 (C.D. Cal. June 1, 2022) .......................................... 2, 5, 6

*Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Grp.*,
  2016 WL 6138416 (C.D. Cal. May 6, 2016) ............................................. 12

*Trovata, Inc. v. Forever 21, Inc.*,
  2008 WL 11342722 (C.D. Cal. Dec. 15, 2008) ......................................... 14

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
  853 F.3d 980 (9th Cir. 2017) .................................................................. 15

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
  549 F. Supp. 2d 1168 (N.D. Cal. 2007) ................................................... 11

*Wal-Mart Stores, Inc. v. Samara Bros, Inc.*,
  529 U.S. 205 (2000) ............................................................................... 13

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*,
  419 F.3d 925 (9th Cir. 2005) .................................................................. 3

PLAINTIFFS' OPPOSITION TO BUILD-A-BEAR WORKSHOP, INC.'S MOTION TO DISMISS

**<u>Rules</u>**

Fed. R. Civ. P. 15(a)(2) .................................................................... 17

Fed. R. Civ. P. 12(b)(6) ................................................................. 1, 4

C.D. Cal. R. 7-3 ............................................................................. 18

**<u>Regulations</u>**

37 C.F.R. § 2.52 ............................................................................. 10

**<u>Other Authorities</u>**

McCarthy on Trademarks and Unfair Competition § 8:1 (5th ed.) ........................... 10

PLAINTIFFS' OPPOSITION TO BUILD-A-BEAR WORKSHOP, INC.'S MOTION TO DISMISS

## I.   **INTRODUCTION AND BACKGROUND**

Plaintiffs' Squishmallows toys have skyrocketed to fame, topping sales charts and rapidly becoming coveted collectors' items. They have been described by the *Washington Post* as "the hottest toy on the market," (ECF 25, "AC" ¶ 58) and have surpassed other well-known mega brands like Lego and Hot Wheels to become the most popular toy brand in the country. (*Id.* ¶ 62.) Squishmallows' meteoric rise is further demonstrated through its online popularity, with branded videos being viewed more than 11 billion times on TikTok. (*Id.* ¶ 55.) Put simply, consumers love Squishmallows. (*Id.* ¶ 1.)

In a crowded toy market with many available plush toys, Squishmallows has become a runaway success. As described in paragraphs 25-46 of the Amended Complaint (the "Identified Trade Dress"), the popular trade dress associated with many Squishmallows is, in simplified form, a fanciful rendition of a unique animal with simplified Kawaii faces in an egg/bell shape in combination with other features that create a distinguishing aesthetic look. Due to the immense popularity of the toys, the look associated with this trade dress has grown synonymous with the Squishmallows brand. (*Id.* ¶¶ 47-50.)

Witnessing Plaintiffs' success with Squishmallows in the toy market, competing toy company Defendant Build-A-Bear Workshop, Inc. ("Build-A-Bear") decided to release products that copy the Identified Trade Dress. (*Id.* ¶¶ 65-67.) In January 2024, Build-A-Bear launched "Skoosherz," a line of plush toys that undeniably seeks to usurp the benefits and trade off the reputation and goodwill of the Plaintiffs' Identified Trade Dress. (*See, e.g., id.* ¶ 67.) Indeed, there is already substantial *actual* evidence of consumer confusion between Plaintiffs' Squishmallows and Build-A-Bear's Skoosherz. (*Id.* ¶¶ 69-78.) For example, consumers have remarked about Build-A-Bear's Skooshers: "so now ur making squishmallows?"; "knockoff squishmallows"; "Cmon plagiarism"; "like a worse Squishmallow"; and "soulless ripoff[s]." (*Id.* ¶¶ 73-76.)

- 1 -

Plaintiffs thus filed this case against Build-A-Bear to stop the ongoing infringement of the Identified Trade Dress; end the infringement of the copyrighted Squishmallows (*id.* ¶¶ 51, "Copyrighted Works"); and recover damages due to the substantial harm caused by Build-A-Bear (*id.* ¶¶ 6-7).

In response, Build-A-Bear filed a motion to dismiss ("Motion") arguing that Plaintiffs have not sufficiently identified their trade dress because it does not encompass every toy sold under the Squishmallows trademark and that Plaintiffs have not sufficiently pleaded secondary meaning or inherent distinctiveness. Build-A-Bear also challenges Plaintiffs' copyright infringement claims, arguing Plaintiffs have not alleged substantial similarities between the protectable design elements of Plaintiffs' Copyrighted Works and Build-A-Bear's infringing toys. Build-A-Bear's arguments must be rejected for five reasons.

*First*, Build-A-Bear's argument that Plaintiffs have failed to adequately plead the elements of its trade dress incorrectly assumes that such a requirement exists. As Judge Wu held in *Therabody, Inc. v. DJO, LLC*, there are no "published Ninth Circuit or Supreme Court decision[s] identifying [the exhaustive identification of the asserted trade dress] as a pleading requirement for such claims." 2022 WL 17360133, at *2 (C.D. Cal. June 1, 2022). Instead, the plaintiff need only plead the three elements required to state a trade dress claim as outlined by Ninth Circuit precedent. *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001). Since Build-A-Bear "offers no proper argument that any of these elements are missing from Plaintiff[s'] allegations," its motion to dismiss must be denied. *Therabody*, 2022 WL 17360133, at *2.

*Second*, even if Plaintiffs were required to identify the specific trade dress at issue, they have met the low bar to identify the trade dress at the pleading stage. Courts that examine trade dress descriptions at the pleading stage allow them to proceed "[s]o long as a plaintiff has alleged a complete recitation of the concrete elements of its alleged trade dress." *Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1240 (C.D.

- 2 -

Cal. 2014).  It can do so by both describing the trade dress in words, *id.*, with pictures, or both in combination with one another.  *See Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, 2015 WL 12731929, at *4 (C.D. Cal. May 8, 2015) (finding trade dress properly alleged where plaintiffs alleged "the elements of a trade dress and provid[ed] an image of a product").  Plaintiffs here have done both: identified the five elements of the Asserted Trade Dress *and* provided images of the Squishmallows products that practice that trade dress.  (AC ¶ 28-46.)  Courts routinely deny motions to dismiss where a plaintiff has provided an exhaustive list of the elements of its asserted trade dress.  *See, e.g.*, *Lepton Labs*, 55 F. Supp. 3d at 1240 (denying motion to dismiss).

*Third*, Build-A-Bear's arguments that Plaintiffs have failed to allege facts supporting secondary meaning are meritless and, in any event, present factual disputes not ripe for adjudication at this stage.  To plead secondary meaning, Plaintiffs need only allege that "consumers associate the design features with a particular producer." *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 754 (9th Cir. 2018).  Plaintiffs have done so here.  Build-A-Bear's contentions that the Identified Trade Dress is "so generic and commonplace that it cannot be protected under law even if secondary meaning in the market [place] could be proven" (ECF 27 at 25) is a question of fact not suited for a motion to dismiss.  *Clicks Billiards, Inc.*, 251 F.3d at 1262 ("Whether a particular trade dress has acquired secondary meaning is a question of fact."); *Mercado Latino, Inc. v. Indio Products, Inc.*, 2017 WL 1356315, at *2 (C.D. Cal. Apr. 11, 2017) ("[P]roblems of overbreadth are better considered as question[] of genericness rather than specificity . . . Questions of genericness, however, are questions of fact." (citing *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 929 (9th Cir. 2005)).

*Fourth*, Build-A-Bear's argument that Plaintiffs cannot base their copyright infringement claims on "objective facts" "first expressed by nature," (ECF 27 at 29) misses the point.  Plaintiffs do not take issue with Build-A-Bear's decision to depict the same animals as Plaintiffs, but instead its decision to copy Plaintiffs unique design

- 3 -

choices. Here, Plaintiffs allege that Build-A-Bear not only copied the Identified Trade Dress, but used the *same suppliers* to manufacture its products that Plaintiffs use to manufacture Squishmallows. Plaintiffs have therefore sufficiently alleged substantial similarity between the protected elements of its Copyrighted Works.

*Finally*, Build-A-Bear's Motion should be denied for failure to comply with Local Rule 7-3. Local Rule 7-3 requires the moving party to meet and confer on motions to occur at least *seven days* before the filing of a motion. Even knowing this, Build-A-Bear chose not to reach out to Plaintiffs until *two days* before their motion was due, including to identify a completely new argument Build-A-Bear did not raise in its initial motion.

Accordingly, Plaintiffs respectfully request the Court deny Build-A-Bear's Motion in its entirety.

## II. <u>LEGAL STANDARD</u>

A court may only grant dismissal under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff fails to present a cognizable legal theory or to allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In assessing a motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To survive a Rule 12(b)(6) motion, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. <u>ARGUMENT</u>

### A. **Plaintiffs' Description of the Identified Trade Dress is Sufficient at the Pleading Stage**

"Trade dress refers generally to the total image, design, and appearance of a product and may include features such as size, shape, color, color combinations, texture or graphics." *Clicks Billiards*, 251 F.3d at 1257-58 (cleaned up). "To sustain

- 4 -

a claim for trade dress infringement, [a plaintiff] must prove: (1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." *Id.*

Here, Build-A-Bear does not directly challenge functionality or the likelihood (and substantial actual evidence of) consumer confusion. (*See generally* ECF 27.) It instead focuses exclusively on whether Plaintiffs' *trade dress description* is sufficient to proceed to discovery and factual issues about inherent distinctiveness. (*Id.* at 22, 25.)

Build-A-Bear's arguments fail for three reasons: (1) there is no requirement to identify a specific trade dress definition at the pleading stage; (2) Plaintiffs' Identified Trade Dress provides sufficient notice of the asserted trade dress; and (3) Build-A-Bear's distinctiveness arguments are meritless and, in any event, present fact disputes not ripe for adjudication at this stage.

1.    <u>There is No Legal Requirement for Plaintiffs to Detail Every Element of a Protectable Trade Dress at the Pleading Stage</u>

Build-A-Bear argues that the Identified Trade Dress is "overly broad, vague, generic, and ever-changing." (ECF 27 at 8.) This argument improperly assumes that, at the pleading stage, a plaintiff must plead, and a court must assess, all elements of its trade dress. The law is otherwise.

Judge Wu's decision in *Therabody* is directly on point. There, the defendant argued, as Build-A-Bear does here, that "to state a claim for trade dress infringement, a plaintiff must first identify the trade dress at issue." 2022 WL 17360133, at *2. But, as Judge Wu held, neither the parties nor the Court "located any published Ninth Circuit or Supreme Court decision identifying this as a pleading requirement for such claims." *Id.* Instead, the plaintiff need only plead non-functionality, secondary meaning, and likelihood of confusion. *Id.* If the plaintiff does so, the trade dress claim proceeds beyond the pleading stage and "[t]o the extent [d]efendant believes there is

a problematic uncertainty in [p]laintiff's trade dress claims beyond those required allegations, that is one permissible aim of discovery." *Id.*

The same analysis applies here. Plaintiffs have sufficiently pleaded non-functionality (AC ¶ 49); secondary meaning (*id.* ¶¶ 58-63); and likelihood of confusion (*id.* ¶¶ 69-78.) While Build-A-Bear challenges Plaintiffs' allegations supporting secondary meaning, these arguments fail for reasons further discussed below, *see infra* III.A.3. Accordingly, Plaintiffs' trade dress claims must proceed to discovery and Build-A-Bear's motion to dismiss should be denied. *Therabody*, 2022 WL 17360133, at *2 (denying motion to dismiss trade dress claims for failure to identify a trade dress).

2. <u>There is No "Consistent Overall Look" Requirement and Any
Such Argument Presents Factual Issues Not Ripe for the Pleading
Stage</u>

Build-A-Bear argues that it is not on notice of the claims against it because the features described in the Identified Trade Dress "are not all consistently present throughout the entire Squishmallows product line." (ECF 27 at 16.) This argument fails for multiple reasons.

*First*, Build-A-Bear cites no Ninth Circuit law in support of its "consistent overall look" argument. That is because "the Ninth Circuit has not yet adopted the 'consistent overall look' test for trade dress claims based upon a line of products." *Moroccanoil, Inc. v. Marc Anthony Cosmetics, Inc.*, 57 F. Supp. 3d 1203, 1223-24 (C.D. Cal. 2014); *Paramount Farms Int'l LLC v. Keenan Farms Inc.*, 2012 WL 5974169, at *2-3 (C.D. Cal. Nov. 28, 2012) ("The Ninth Circuit has not addressed whether it endorses the 'consistent overall look' test."). Build-A-Bear thus asks this Court to create new law to dismiss Plaintiffs' claims at the pleading stage. It should decline to do so.

*Second*, even courts applying Build-A-Bear's offered test recognize that "[t]his standard do[es] not require that the appearance of the series or line of products or packaging be identical." *Moroccanoil*, 57 F. Supp. 3d at 1223-24 (internal quotation

omitted). Instead, "a plaintiff generally is permitted to define a product line 'as it sees fit.'" *Id.* "The issue is [simply] whether the *trade dress* [not every product] 'conveys a single and continuing commercial expression.'" *Id.* at 1224 (emphasis added).

Indeed, courts allow plaintiffs to "only seek[] trade protection over the [products] that bear the [] indicia of the claimed trade dress." *Paramount*, 2012 WL 5974169, at *3. This is sensible: "even if plaintiff distributed the same products in fifteen different package designs for each of fifteen different customers, this fact alone would not prevent plaintiff from obtaining trade dress protection for one of the fifteen different packaging styles." *Id.* (cleaned up).[1] In other words, the test is whether the *trade dress* of a product or line of products is unique, not whether every single product in that line of products has the same look. *See Coach, Inc. v. Jay*, 2015 WL 12681378, at *2 (C.D. Cal. June 25, 2015) (denying summary judgment motion for failure to establish a "consistent overall look" even because "each of [the] products [could] possess[] its own unique and cognizable trade dress").

That is precisely the case here: Plaintiffs seek protection only for the Identified Trade Dress, *not* designs for every Squishmallows-branded product ever sold. Therefore, even if the Court believes that *some* Squishmallows-branded products do not practice the Identified Trade Dress, that does not defeat Plaintiffs' ability to obtain protection for the products that *do* practice the Identified Trade Dress.[2] *Paramount*,

---

[1] Holding otherwise would be unreasonable: companies would lose their rights to one popular trade dress as soon as they introduced a different trade dress with the same branding. For example, under Build-A-Bear's theory, Coca-Cola would lose protection for "its well-known trade dress" in its "contour bottle design," *Lepton Labs*, 55 F. Supp. 3d at 1240, by introducing a can with the same branding but a different *design*. As detailed above, that cannot be, and is not, the law.

[2] Build-A-Bear misconstrues language in the Amended Complaint that "in particular but without limitation" Squishmallows' shapes, colors, textures and graphics serve as a "distinctive source identifier," (AC ¶ 48), to argue that "Plaintiffs ostensibly admit that the Claimed Squishmallows Trade Dress is ***still*** subject to change," (ECF 27 at (Continued...)

2012 WL 5974169, at *3 ("[T]he fact that some of Plaintiff's bins did not embody the Claimed Trade Dress does not foreclose trade dress protection for the bins that did.").

Indeed, the Amended Complaint details how the designers incorporated the Identified Trade Dress in the first seven Squishmallows. (AC ¶ 24.) Build-A-Bear does not deny that those seven Squishmallows practice the Identified Trade Dress and thus share a "consistent overall look." (*See generally* ECF 27.) The same is true for the Squishmallows Build-A-Bear copied: they all practice the Identified Trade Dress and share a "consistent overall look." (AC ¶¶ 29-33.) Build-A-Bear does not argue otherwise. (*See generally* ECF 27.) Accordingly, since these main products-at-issue all practice the Identified Trade Dress, Build-A-Bear cannot obtain dismissal based on Squishmallows products not directly at issue in this case. *Paramount*, 2012 WL 5974169, at *3 ("[T]o the extent that Defendant takes issue with bins or other materials that do not share the five factors of the Claimed Trade Dress, the Court need not consider such items in determining whether Plaintiff holds a valid trade dress.").

*Third*, Build-A-Bear's argument is not appropriately evaluated at the motion to dismiss stage. Courts routinely hold, even on *summary judgment*, that whether a line of products have a "consistent overall look" is a triable jury issue. *See Moroccanoil*, 57 F. Supp. 3d at 1224 ("Viewing the [] line of products in the light most favorable to Plaintiff, there is a triable issue of fact as to whether [the] products present a 'consistent overall look.'"); *Paramount*, 2012 WL 5974169, at *3 (similar).[3]

_____

23). However, Plaintiffs do not have any intention of changing the Identified Trade Dress. Instead, this language only provides that other facets of Squishmallows products unrelated to the elements of the Identified Trade Dress contribute to Squishmallows' distinctiveness among consumers and status as a global phenomenon.

[3] Build-A-Bear cites to unreported cases in support of its consistent overall look argument, but these cases are either not at the motion to dismiss stage or are otherwise inapposite. *See Interactive Health LLC v. King Kong USA, Inc.*, 2008 WL 11337393, at *2 (C.D. Cal. Mar. 6, 2008) (motion for summary judgment); *Crafty Prods., Inc. v. Michaels Cos., Inc.*, 389 F. Supp. 3d 876, 883 (S.D. Cal. 2019) (line of products which (Continued...)

3. <u>Plaintiffs Have Provided Sufficient Notice of Their Trade Dress</u>

Even if it were required, Plaintiffs have provided a sufficient recitation of the trade dress at issue under the standard employed by courts who have examined the trade description at the pleading stage.  Build-A-Bear relies on the Court's ruling in *Kelly Toys v. Zuru*, wherein the Court dismissed Plaintiffs' trade dress description with leave to amend, to argue Plaintiffs' Trade Dress description is insufficient.  (ECF 27 at 27.)[4]  In doing so, they gloss over the *ten pages* of additional detail explaining each element of the trade dress, including their limitations.

District courts in the Ninth Circuit hold that "[s]o long as a plaintiff has alleged a complete recitation of the concrete elements of its alleged trade dress, it should be allowed to proceed." *Lepton Labs*, 55 F. Supp. 3d at 1240; *see id.* (cautioning against "requir[ing] the plaintiff to essentially prove—as opposed to simply allege—that its trade dress satisfies all of the essential elements at the pleading stage").  Even if "[a]

---

the plaintiffs sought trade dress protection for "differ[ed] vastly," because they were "made of different materials, are different shapes, serve different purposes, and have different designs").

[4] Build-A-Bear also relies on an order in *Kellytoy v. Dan-Dee* for the same proposition.  But *Dan-Dee* addressed a trade dress description that was far less detailed with fewer elements than in this case.  The trade dress in *Dan-Dee* was articulated as "(1) substantially bell-shaped plush toys embodying fanciful renditions of animals/characters, (2) embroidered anime-inspired minimalist, whimsical facial features, (3) a velvety velour-like textured exterior, and (4) stuffing with a light 'marshmallow,' memory foam-like texture."  (ECF 27-2 at 120.)  The *Dan-Dee* court found this far less detailed description insufficient, but granted Plaintiffs leave to amend to include greater detail.  However, the *Dan-Dee* court never considered the sufficiency of Plaintiffs' more detailed amended description, let alone the far more detailed Identified Trade Dress in this case.

In any event, multiple courts have found far *less* detailed trade dress descriptions of the same products as in this case to be sufficient to proceed to discovery.  *See Kellytoy Worldwide, Inc. v. Hugfun Int'l, Inc.*, 2019 WL 8064073, at *4 (C.D. Cal. Dec. 4, 2019) (denying motion to dismiss); *Kellytoy Worldwide, Inc. v. Ty, Inc.*, 2020 WL 5026255, at *2 (N.D. Ill. Aug. 25, 2020) (similar).

defendant may very well believe that a [trade dress description] does not make out a claim for protectable trade dress," "granting a dismissal motion based upon that belief would turn the litigation process on its head." *Id.* The time to test the "legal merits" of the trade dress description is "at summary judgment or trial when the parties provide with all relevant, admissible evidence—not at the pleading stage when the court has little more than the plaintiff's allegations and the defendant's summary denial of them." *Id.*

Here, Plaintiffs have pleaded a complete recitation of the concrete elements of the Identified Trade Dress.[5] Indeed, Plaintiffs include the elements of its Identified Trade Dress, *pictures* of the relevant products, and *nearly ten pages* of detail explaining exactly what the trade dress means. (AC ¶¶ 25-46.) They also include pictures of the *infringing* products side-by-side with Plaintiffs' products. (*Id.* ¶ 67.) This is sufficient at the pleading stage. *See, e.g.*, *R&A Synergy LLC v. Spanx, Inc.*, 2019 WL 8137706, at *2 (C.D. Cal. Sept. 4, 2019) (finding a "plausible claim for trade dress infringement" where plaintiff "has identified specific designs that are allegedly being infringed [] and has pleaded exhibits providing a visual comparison of the allegedly infringing designs"); *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, 2015

---

[5] Build-A-Bear argues without authority that "[i]n tacit recognition of the ever-varying features of the Squishmallows product line, Plaintiffs have never attempted to obtain federal registration of" the Identified Trade Dress, and that "it is highly doubtful Plaintiffs could never come up with any drawing of claimed elements of the Squishmallows product line that could properly satisfy regulatory notice requirements." (ECF 27 at 24 (citing 37 C.F.R. § 2.52).) But whether a trade dress is registered has no bearing on whether it is protectable. Section 43 of the Lanham Act "protects against infringement of unregistered marks and trade dress as well as registered marks." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 n.3 (9th Cir. 2000) (emphasis added) (noting that "the same standard applies to both registered and unregistered trademarks" (cleaned up)); McCarthy on Trademarks and Unfair Competition § 8:1 (5th ed.) ("These days, unregistered trade dress is protected under federal Lanham Act § 43(a)(1)(A) under essentially the same rules as are trademarks.").

WL 12731929, at *4 (C.D. Cal. May 8, 2015) ("[L]isting [of] the elements of a trade dress and providing an image of a product bearing the dress sufficiently identifies the trade dress."); *IMEX Leader, Inc. v. Zest US Wholesale, Inc.*, 2023 WL 2626968, at *6 (C.D. Cal. Feb. 15, 2023) (trade dress description was sufficient where plaintiff "provide[d] a multitude of images of examples").

Instead, Build-A-Bear mischaracterizes Plaintiffs' Amended Complaint, arguing that Plaintiffs' attempts over time to provide a more definite recitation of its trade dress amounts to changing its trade dress definition. (ECF 27 at 23.)  At bottom, Build-A-Bear contends that Plaintiffs' efforts over time to provide a more definite trade dress definition is evidence that its trade dress is vague.  However, courts have cautioned against "fault[ing]" parties for providing more detailed descriptions of their trade dress to aid a court in evaluating "the composite tapestry of visual effects" comprising the trade dress as a whole. *Lepton Labs*, 55 F. Supp. 3d at 1240 ("It would be strange for a court to fault Coca–Cola for providing a detailed description of its bottle in pleading alleged trade-dress infringement, for if Coca–Cola did not provide such a description, its theoretical trade-dress claim would likely fail for vagueness."). That Plaintiffs have previously provided trade dress definitions that were deemed vague or overly broad has no bearing on whether the trade dress alleged in the Amended Complaint provides sufficient notice.

In reality, Build-A-Bear's gripe is instead with the *merits* of the Identified Trade Dress, not its description.  Yet Build-A-Bear does not cite a *single published case* from the Ninth Circuit that dismissed trade dress claims with prejudice at the pleading stage based on the alleged deficiencies in a description that includes exhaustive elements of an Identified Trade Dress—not to mention one with the level of detail and explanation provided here.  (ECF 27 at 28 (citing *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1175-76 (N.D. Cal. 2007) (granting a motion for *summary judgment* and only after examining "the evidence submitted by the parties")); *id.* at 17 (citing *Crafty Prods., Inc. v. Michaels Cos., Inc.*, 389 F. Supp. 3d 876, 881-83 (S.D.

- 11 -

Cal. 2019) (providing leave to amend where, unlike here, plaintiff did not include an exhaustive list of elements)).)[6]

Instead, where, as here, the defendant only presents *merits* challenges to a trade dress description, courts routinely deny motions to dismiss trade dress claims. *See, e.g.*, *IMEX*, 2023 WL 2626968, at *6 (denying motion to dismiss where plaintiff included a trade dress description and holding that "these allegations [are] sufficient at this stage of the proceedings"); *Deckers*, 2015 WL 12731929, at *4 (rejecting argument that dismissal is warranted simply because an element of the trade dress description is "too general").

### 4. Plaintiffs Have Sufficiently Pleaded Facts Showing the Identified Trade Dress Has Acquired Secondary Meaning

Build-A-Bear argues that Plaintiffs have failed to "adequately plead fact supporting secondary meaning of the Claimed Squishmallows Trade Dress." (ECF 27 at 25.) At bottom, this is an argument about distinctiveness.

"A trade dress has acquired secondary meaning when consumers associate the design features with a particular producer." *adidas Am., Inc.*, 890 F.3d at 754 (citing *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 967 (9th Cir. 2011)). "The basic element of secondary meaning is a mental recognition in buyers' and potential

---

[6] The unpublished cases Build-A-Bear cites from the Ninth Circuit likewise do not help it because they either involve vastly different facts, were summary judgment orders, and/or found the trade dress description *sufficient*. *See, e.g.*, *Sleep Sci. Partners v. Lieberman*, 2010 WL 1881770, at *3-4 (N.D. Cal. May 10, 2010) (finding description insufficient because, unlike here, "Plaintiff employs language suggesting that these components are only some among many"); *Interactive Health LLC*, 2008 WL 11337393, at *2-3 (holding, *on summary judgment*, that the trade description was *not* "impermissibly vague"); *Sugarfina, Inc. v. Sweet Pete's LLC*, 2017 WL 4271133, at *4 (C.D. Cal. Sept. 25, 2017) (finding trade dress insufficient because the elements provided were not exhaustive); *Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Grp.*, 2016 WL 6138416, at *3 (C.D. Cal. May 6, 2016) ("[T]he combination of the allegations and the attached picture [*is*] sufficient to put Defendant on notice of the trade dress at issue.").

buyers' minds that products connected with the [mark] emanate from or are associated with the same source." *Fleischer*, 654 F.3d at 967 (quoting *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 820 (9th Cir. 1980)). "'[A] single, albeit anonymous, source' suffices." *P & P Imps. LLC v. Johnson Enters., LLC*, 46 F.4th 953, 960 (9th Cir. 2022).

Indeed, the Supreme Court has held, contrary to Build-A-Bear's argument, that "a mark has acquired distinctiveness, *even if it is not inherently distinctive*, if it has developed secondary meaning." *Wal-Mart Stores, Inc. v. Samara Bros, Inc.*, 529 U.S. 205, 211 (2000) (emphasis added). Indeed, even *colors*, which are commonplace and generic, *can* obtain protection under the Lanham Act "*upon a showing of secondary meaning.*" *Id.* (emphasis in original).

"Some of the relevant factors for determining secondary meaning include the exclusivity, manner, and length of use of the trade dress, the amount and manner of advertising, the amount of sales, and proof of intentional copying by the defendant." *adidas Am.*, 890 F.3d at 754 (citing *Art Attacks Ink. LLC v. MGA Entertainment Inc.*, 581 F.3 1138, 1145 (9th Cir. 2018)). "Whether a particular trade dress has acquired secondary meaning is a question of fact," not an issue the Court can address at this stage. *Clicks Billiards*, 251 F.3d at 1262 (internal quotations omitted).

Plaintiffs have alleged facts plausibly demonstrating that the Identified Trade Dress has acquired a secondary meaning. Plaintiffs have expended a great deal of time, effort, and money in the successful promotion of its Squishmallows line. (*See* Compl. ¶¶ 52-63.) These marketing efforts have contributed to the immense popularity of the toys—leading the New York Times to proclaim that "Squishmallows Are Taking Over." (*Id.* ¶ 59.) Celebrities have embraced and promoted the toys, contributing to their sales increasing over 300% in 2022 alone with annual sales topping $200 million worldwide. (*Id.* ¶ 57.) Squishmallows' accolades have grown, including their recent recognition as the coveted "Toy of the Year," "Plush Toy of the Year," and the "People's Choice" awards by the Toy Foundation. (*Id.* ¶ 62.) This

- 13 -

widespread popularity and success has caused Squishmallows to acquire distinct recognition in the marketplace, leading consumers to associate the toys with the Squishmallows Trade Dress.

Indeed, even Build-A-Bear's cited cases support a finding of secondary meaning here. *Opulent Treasures, Inc. v. Ya Ya Creations*, decided on a motion for summary judgment, held squarely that "[a] mark that is not inherently distinctive may nevertheless acquire distinctiveness (also called 'secondary meaning') over time, if the public forms a sufficiently strong association between the mark and the source or brand it is intended to signify." 682 F. Supp. 3d 815 at *3 (C.D. Cal. 2023). The distinctive design elements of the Identified Trade Dress, in combination with Plaintiffs' successful efforts to promote the Squishmallows line and the products' subsequent rise as a global phenomenon, allow the Identified Trade Dress to acquire secondary meaning among consumers. (AC ¶¶ 52-63.). For this reason, Build-A-Bear's argument that "evidence of past sales, alone, is irrelevant" is misleading; not only are the Squishmallows products widely successful in sales numbers, but it is also clear that Plaintiffs' promotion of the Squishmallows line results in consumers associating the Identified Trade Dress with Squishmallows products. (AC ¶¶ 54-61.)

Moreover, Build-A-Bear's argument involves quintessential disputes of fact that should be left for discovery and resolved at trial; it does not justify dismissal of a well-pleaded complaint. *See, e.g.*, *Clicks Billiards*, 251 F.3d at 1264 (citing discovery like a consumer survey and evidence of intentional copying as creating triable issues of fact on secondary meaning); *Cal. Scents v. Surco Prods, Inc.*, 28 F. App'x 659, 661-62 (9th Cir. 2002) (reversing grant of summary judgment where "genuine question of material fact" even though "[s]ome components of [] trade dress are utilitarian and therefore cannot be protected"); *Trovata, Inc. v. Forever 21, Inc.*, 2008 WL 11342722, at *3 (C.D. Cal. Dec. 15, 2008) (finding genuine issues of material fact where defendant's "statements that individual features are functional do not sufficiently

1    address . . . the overall trade dress"); *Bell v. Harley Davidson Motor Co.*, 539 F. Supp.

2    2d 1249, 1256 (S.D. Cal. 2008) (similar).

3    **B.    Plaintiffs' Copyright Infringement Claims Sufficiently Plead**

4        **Substantial Similarity Between Plaintiffs' Toys and Build-A-Bear's**

5        **Infringing Toys**

6        Build-A-Bear argues Plaintiffs' copyright infringement claims fail for failure to

7    plead substantial similarity between Plaintiffs' toys and the infringing toys.

8        To allege actionable copying, Plaintiffs must plead facts plausibly showing that

9    the works in questions are either (1) "strikingly similar" or (2) "substantially similar

10   and that [Defendant] had access to [the Subject Work]." *Malibu Textiles, Inc. v. Label*

11   *Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019). "In assessing whether particular

12   works are substantially similar, or strikingly similar, this Circuit applies a two-part

13   analysis: the extrinsic test and the intrinsic test." *Unicolors, Inc. v. Urban Outfitters,*

14   *Inc.*, 853 F.3d 980, 985 (9th Cir. 2017). The extrinsic test "compares the objective

15   similarities of specific expressive elements in the two works." *Skidmore as Tr. for*

16   *Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). The

17   intrinsic test examines "similarity of expression from the standpoint of the ordinary

18   reasonable observer, with no expert assistance." *Id.*

19       Plaintiffs allege that "Skoosherz toys have the *same* distinctive trade dress as

20   the popular Squishmallows," and provide side-by-side comparison images to

21   demonstrate the substantial similarity between the toys. (AC ¶ 67.) The comparison

22   images show that "reasonable minds could readily disagree about the substantial

23   similarities between" the two toys, "rendering dismissal inappropriate." *Klauber*

24   *Bros., Inc. v. City Chic Collective Ltd.*, 2022 WL 18278400, at *5 (C.D. Cal. Dec. 6,

25   2022). "Because the similarities, as depicted by the images, are more than de minimis,

26   Plaintiff[s] have alleged substantial similarity." *Id.* Indeed, "where there are clear

27   allegations of access, plaintiffs need only demonstrate more than de minimis

28   similarities to plausibly demonstrate copying on a motion to dismiss." *Id.* Here,

- 15 -

Plaintiffs allege that Build-A-Bear not only copied the Identified Trade Dress, but used the *same suppliers* to manufacture its products that Plaintiffs use to manufacture Squishmallows. (AC ¶ 68.) Accordingly, Build-A-Bear had access to Plaintiffs' designs, and the two toys' more than de minimis similarity suffices to plead substantial similarity on this motion to dismiss.

Build-A-Bear contends the only similarities between Plaintiffs' and Build-A-Bear's frog and axolotl plush toys are that they depict the same subject matter. (ECF 27 at 29-30.) Build-A-Bear also points to minute differences between the toys, such as the length of their smile and the use of bellies on the toy. (*Id.*) Build-A-Bear misses the bigger picture. While it may be "an objective fact that frogs are generally green and found with protruding eyes," (ECF 27 at 29), frogs and axolotls in nature do not present as circular creatures with simplified Kawaii-style facial features. Plaintiffs do not take issue with Build-A-Bear creating a plush toy of the same types of animals; Plaintiffs take issue with Build-A-Bear copying their specific design choices when rendering each animal as a toy. Build-A-Bear could have created the same animals using different stylistic elements, and in fact, already did with their original Green Frog and Pink Axolotl. (ECF No. 21-2, Ex. N.) Instead, Build-A-Bear chose to model its Green Frog and Pink Axolotl Skoosherz after Plaintiffs' Squishmallows products by using the same distinctive "specific expressive elements" as Plaintiffs. *Skidmore*, 952 F.3d at 1064. When designing these Skoosherz products, Build-A-Bear rejected their originally traditional, full-figure designs and instead used an "egg/bell/oval shape," with limbs that "are not proportional to what a consumer would expect in a toy that is meant to look like a real animal or character"—exactly the design choices that Plaintiffs chose for Squishmallows products. (AC ¶ 29.) By copying these specific expressive elements, Build-A-Bear undoubtedly intended to capitalize on Squishmallows' unique, nontraditional design choices, which Plaintiffs chose specifically to "differentiate their new products from the marketplace." (*Id.* ¶ 30.) Build-A-Bear cannot pretend that it innocently chose to employ the *exact same design*

- 16 -

*choices* as Plaintiffs for its Skoosherz products long after such design choices had become synonymous with the unique expressive elements of Plaintiffs' products.

In any event, "[s]ubstantial similarity is usually an extremely close issue of fact" that is "disfavored" for courts to determine even on motions for summary judgment, unless "reasonable minds could not differ as to the absence of substantial similarity in expression." *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir. 1984). Build-A-Bear contends that the competing products "are not substantially similar as a matter of law," but engages in a purely factual inquiry, citing no case law. (ECF 27 at 29.) On a motion to dismiss, Build-A-Bear's factual arguments should not be credited.

### C. If Needed, Plaintiffs Should Be Provided Leave to Amend

Although Plaintiffs maintain they have more than adequately pleaded facts supporting their trade dress and copyright claims, if the Court disagrees, Plaintiffs respectfully request leave to amend. Leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and courts frequently "allow leave to amend to re-state the trade dress allegations in detail." *Creative Co-Op, Inc. v. Elizabeth Lucas Co.*, 2012 WL 761736, at *3 (D. Idaho Mar. 7, 2012) (collecting cases). "[T]he fact that Plaintiff amended its complaint once as a matter of course does not require denial" of a subsequent motion for leave to amend. *Harris v. Best Buy Stores, L.P.*, 2015 WL 8527332, at *4 (N.D. Cal. Dec. 11, 2015) (granting leave to amend after previous amendment).[7]

Leave to amend would not be futile because even if the Court believes, for example, that *some* Squishmallows-branded products do not practice the Identified Trade Dress, Plaintiffs can still obtain protection for the products that *do* practice the

---

[7] Build-A-Bear argues disingenuously that Plaintiffs have taken "fourteen bites at the apple" and leave to amend should be denied. (ECF 27 at 31.) But Plaintiffs have not amended the trade dress description in this case fourteen times; the fact that Plaintiffs have previously litigated trade dress claims in unrelated cases that did not involve Build-A-Bear is immaterial to this litigation.

Identified Trade Dress. *Paramount*, 2012 WL 5974169, at \*3 ("[T]he fact that some of Plaintiff's bins did not embody the Claimed Trade Dress does not foreclose trade dress protection for the bins that did."). Therefore, Plaintiffs could, if required, amend to narrow the list of Squishmallows that practice the Identified Trade Dress. Any other deficiencies—such as any remaining allegedly "vague" element—can likewise be clarified to address the Court's concern. Put simply, there is no *legal* deficiency in Plaintiffs' Amended Complaint and any factual shortcomings the Court finds can be addressed through an amended pleading.

### D.    Defendants' Motion Should Be Dismissed for Failure to Comply with Local Rule 7-3

Under Local Rule 7-3, "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." C.D. Cal. R. 7-3. This conference of counsel "shall take place *at least seven (7) days prior* to the filing of the motion." *Id.* (emphasis added). "Parties must strictly adhere to the Local Rules of this district, and a district court has the discretion to strike any motion that fails to comply with the Local Rules." *Smith v. Closet World, Inc.*, 2016 WL 11002376, at \*1 (C.D. Cal. Dec. 12, 2016) (J. Staton) (citing *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) ("The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing.")).

Plaintiffs filed their Amended Complaint on March 21, 2024. (Bui Decl. ¶ 3.) Counsel for Build-A-Bear did not reach out to meet and confer regarding the grounds of its motion to dismiss until April 2, *two days* before it filed the present motion. (Bui Decl. ¶ 4.) And only *one day* before filing the present motion, *after* Plaintiffs identified the failure to comply with the Local Rules, did Build-A-Bear offer availability for a call. (*Id.*)

Build-A-Bear claims that Plaintiffs refused to have a call.  (ECF 27 at 2.)  That is incorrect.  Plaintiffs simply informed Build-A-Bear that it had failed to comply with the Local Rules and Plaintiffs disagreed with the merits of this motion.  (Bui Decl. ¶ 6.)

Build-A-Bear also tries to rely on prior meet and confer correspondence for Plaintiffs' original complaint. But the Amended Complaint adds nearly ten pages of additional detail elaborating on the scope of the Identified Trade Dress and yet Build-A-Bear made no attempt to address the claimed deficiencies of the added allegations in its April 2, 2024, email.  (*Id* ¶ 5.)  Moreover, Build-A-Bear identified a completely new argument regarding Plaintiffs' copyright infringement claim not included in its prior motion or meet and confer correspondence.  (*Id.*)  Accordingly, Build-A-Bear's Motion should be denied for failure to comply with Local Rule 7-3.

## IV.    **CONCLUSION**

"The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'"  *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).

Plaintiffs' Amended Complaint easily meets this standard, as it includes detailed allegations describing the elements and scope of the Identified Trade Dress and provides more than enough facts to make it plausible that the Identified Trade Dress has acquired secondary meaning in the minds of consumers.  Where, as here, the real dispute concerns which party is correct as to whether the Identified Trade Dress is protectable, the Ninth Circuit has found even *summary judgment* to be an inappropriate stage for resolution. *Clicks Billiards*, 251 F.3d at 1264 ("[I]t is not the role of the district court at this stage to decide which party has the more compelling argument; rather, it is simply to determine whether a triable issue of fact exists.").  Following Ninth Circuit precedent, this Court should deny Build-A-Bear's effort to dismiss the Plaintiffs' well-pleaded trade dress claims in the Amended Complaint.

1   Dated:  June 7, 2024                    **HUESTON HENNIGAN LLP**

2

3                                     By: *Sourabh Mishra*

4                                         _____

5                                         Sourabh Mishra
                                          *Counsel for Plaintiffs*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO BUILD-A-BEAR WORKSHOP, INC.'S MOTION TO DISMISS

<strong><u>CERTIFICATE OF COMPLIANCE</u></strong>

The undersigned counsel of record for Plaintiffs certifies that this brief contains 6,514 words, which complies with the word limit of L.R. 11-6.1.

Dated:  June 7, 2024                              **HUESTON HENNIGAN LLP**

By: _Sourabh Mishra_

Sourabh Mishra
*Counsel for Plaintiffs*

PLAINTIFFS' OPPOSITION TO BUILD-A-BEAR WORKSHOP, INC.'S MOTION TO DISMISS