**LEWIS RICE LLC**
Michael J. Hickey, *Pro Hac Vice*
mhickey@lewisrice.com
Philip J. Mackey, *Pro Hac Vice*
pmackey@lewisrice.com
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
Telephone: (314) 444-7630
Facsimile: (314) 612-7630

**KEESAL, YOUNG & LOGAN**
Ben Suter, CASB No. 107680
ben.suter@kyl.com
Stacey M. Garrett, CASB No. 155319
stacey.garrett@kyl.com
310 Golden Shore, Suite 400
Long Beach, California 90802
Telephone: (562) 436-2000
Facsimile: (562) 436-7416

*Attorneys for Defendant/Counterclaim Plaintiff Build-A-Bear Workshop, Inc.*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY TOYS HOLDINGS, LLC, JAZWARES, LLC, KELLY AMUSEMENT HOLDINGS, LLC, and JAZPLUS, LLC,<br><br>Plaintiffs/Counterclaim-Defendants,<br><br>vs.<br><br>BUILD-A-BEAR WORKSHOP, INC.,<br><br>Defendant/Counterclaim-Plaintiff. | Case No. 2:24-cv-01169 JLS (MARx)<br><br>**DEFENDANT/COUNTERCLAIM-PLAINTIFF BUILD-A-BEAR WORKSHOP, INC.'S RESPONSE TO COURT ORDER**<br><br>**Hearing Date: None**<br><br>**Fact Discovery Cut-Off: May 23, 2025**<br><br>**Pre-Trial Conference: December 12, 2025**<br><br>**Trial Date: None** |

# INTRODUCTION

There is no dispute that Plaintiffs have asserted, in this case and in multiple previous lawsuits for the past seven years, the presence of unregistered trade dress features purportedly found in each and every one of thousands of ***individually different and unique*** Squishmallows plush toys. (*See* Dkt. 37, Counterclaim, attached as Ex. 2 to Joint Stipulation, ¶¶ 25(a)-(n)). There is also no dispute that "Plaintiffs themselves have taken the position in previous cases that viewing the Squishmallows through photos does not accurately convey the distinct texture and feel" giving rise to this alleged trade dress and that Plaintiffs' own expert (Richard Gottlieb) described the alleged trade dress as "a product design that provides both a visual and ***physical experience to the end-user who*** smiles at is [sic] appearance and ***enjoys in its texture and feel***." (Dkt. 58, at p. 8; Dkt. 57, Build-A-Bear's Supp., Ex. A, ¶¶7-8) (emphases added). As such, this Court agreed that at least "some degree of physical inspection would be appropriate here," but then concluded that inspection of all 3000 Squishmallows products would be "obviously disproportionate to the needs of the case." (Dkt. 58, at p. 8).

Respectfully, what the Court overlooked in its proportionality and burden analysis was the fact that ***the law requires the claimed trade dress elements to exist in every single product at issue***, as explained in Build-A-Bear's briefing. (*See* Dkt. 56, Joint Stipulation, at pp. 4-5 of 582) (citing *Crafty Prods., Inc. v. Michaels Cos.*, 389 F. Supp. 3d 876, 882 (S.D. Cal. 2019) (plaintiffs failed to state a claim because it was "clear to the Court that [the plaintiffs'] products, when taken as a whole, present no consistent look"); *Interactive Health LLC v. King Kong USA, Inc.*, No. CV 06–1902–VBF(PLAx), 2008 WL 11337393, at *2 (C.D. Cal. Mar. 6, 2008) ("[W]hen a plaintiff seeks protection for an entire line of products, the plaintiff must demonstrate the trade dress signifies an overall look that is consistent throughout the entire line."); 1 *McCarthy on Trademarks and Unfair Competition*, § 8:5.50 (5th ed.) ("When it is claimed that the trade dress is inherent in an entire series or line of

products, the proponent faces the '***particularly difficult challenge***' of proving the validity of a broadly defined trade dress which is common to all items in the series or line.") (footnote omitted) (emphasis added)); (Dkt. 57, Build-A-Bear's Supp., at p. 5 of 36) (same).[1]

In view of this law expressly requiring the presence of each of the five unregistered trade dress elements ***in each individually unique Squishmallows product across the entirety of the asserted product line***, Build-A-Bear expressly articulated why physical inspection of ***all*** products was the only viable option to explore the existence and contours of Plaintiffs' claimed, unregistered trade dress:

> But the texture and feel of the products are not only the reasons for which inspection is needed. Kelly Toys touts each of its thousands of Squishmallows products as being unique. And it has asserted intellectual property rights arising out of a very specific, "substantially egg/bell/oval", shape. The difference between "substantially egg/bell/oval" and "substantially sphere/round/orb" is material, as Kelly Toys has asserted rights in the former but not the latter. Yet, Squishmallows' shapes vary. ***Neither photographs nor exemplars are adequate to address this issue.*** The same is true for, among others claimed elements, the prevalence of "simplified Kawaii faces," which ***cannot be discerned through photographs or "exemplars" purporting to reflect the features of thousands of unique products***.

(Dkt. 57, at p. 4 of 36) (emphasis added). In other words, where each and every Squishmallows product is individually unique in ways relating to both the look and feel of the products and in ways highly relevant to the existence and contours of the purported trade dress (the existence of which is disputed and squarely at issue), an "exemplar" set is representative of nothing and cannot serve the purpose of Build-

---

[1] As explained in Build-A-Bear's briefing (Dkt. 56, at pp. 3, 5, 11, 13 of 582; Dkt. 57, at pp. 2, 6 of 36), Plaintiffs have deliberately chosen to engage in a multi-year litigation campaign against competitors based on assertions of claimed unregistered trade dress rights residing in thousands of unique products. Any "burden" on Plaintiffs is a consequence of their decision to maintain this highly unusual and aggressive legal position. Of course, had Plaintiffs registered their trade dress, much of this could be avoided. They have chosen to "live in the shadows" for strategic purposes, and then refuse to be held accountable for those positions in discovery. This gamesmanship should not be allowed to continue. Plaintiffs should be required to back up the claims they have been asserting for years and continue to assert in this case.

A-Bear discovering the existence of the claimed trade dress and testing whether each Squishmallows product meets the requirements for trade dress in a product line. (*See also* Dkt. 57, at p. 6 of 36).

For these reasons, Build-A-Bear's request for inspection of the entire set of Squishmallows was substantially justified and wholly consistent with controlling law – even if the Court ultimately disagreed with Build-A-Bear's request. Accordingly, Build-A-Bear continues to maintain that its request for full inspection is necessary and proper and should be granted, and that, in any event, this Court certainly should not award fees to Plaintiffs when Build-A-Bear is simply trying to explore and test Plaintiffs' claimed unregistered trade dress as permitted by Judge Staton's Order, and in a manner that Plaintiffs' own expert insisted was the ***only*** proper way to assess the presence of these asserted trade dress elements.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 37(a)(5)(B) provides that, if a motion to compel is denied, the Court "must not order" the payment of an opposing party's reasonable expenses, including attorneys' fees, incurred in opposition "if the motion was substantially justified or other circumstances make the award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

"Substantially justified" does not mean "justified to a high degree" but rather "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (construing identical language in the Equal Access to Justice Act based on cases interpreting Fed. R. Civ. P. 37). The Supreme Court has made clear that a legal position is substantially justified if there exists a "genuine dispute" or "if reasonable people could differ as to the appropriateness of the contested action." *Id.*; *see also, e.g.*, *RG Abrams Ins. v. Law Offices of C.R. Abrams*, 2021 WL 4972626, at *3 (C.D. Cal. July 19, 2021) (acknowledging that *Pierce*'s formulation governs whether a monetary discovery sanction is appropriate under Fed. R. Civ. P. 37). Thus, a "good

faith discovery dispute" can constitute substantial justification. *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).

# ARGUMENT

## I. Substantial Justification Does Not Hinge On the Outcome of a Motion.

In its Order, the Court indicated that it was "inclined to find" that Build-A-Bear's position was not substantially justified because the Court denied Build-A-Bear's motion "in full and essentially order[ed] the exact course of conduct proposed by Plaintiffs as a compromise." (Dkt. 58, at p. 10). But this inclination is not supported by the law and factual record, and does not square with the Supreme Court's interpretation of the substantial justification standard.

The question is not whether the Court ultimately agreed with Build-A-Bear's position, but whether Build-A-Bear's position was reasonably supported in law and fact. *See Pierce*, 487 U.S. at 565 (holding that a legal position is substantially justified if there exists a "genuine dispute" or "if reasonable people could differ as to the appropriateness of the contested action."); *see also Aevoe Corp. v. AE Tech Co., Ltd.*, 2013 WL 5324787, at *2 (D. Nev. Sept. 20, 2013) (noting that "[s]ubstantial justification exists when the losing party has shown that there is a genuine dispute or that reasonable people could differ as to the appropriateness of the contested action" and holding that a portion of the losing party's arguments met this standard). Indeed, the Advisory Committee Notes to Rule 37 make clear that fee awards are meant to deter "frivolous requests" where "no genuine dispute exists" – not to penalize legitimate disagreements that are ultimately resolved by the Court.

To award any fees here – in the context of a genuine dispute as to the appropriateness and scope of the inspection of the unique products that Plaintiffs themselves have made the subject of this case and previously asserted was critical to their assertion of unregistered trade dress rights – would ignore this controlling case law under Rule 37.

## II. Build-A-Bear's Request Was In Fact Substantially Justified.

### A. The parties genuinely dispute the nature of Plaintiffs' asserted trade dress.

The Court's ruling turned largely on its conclusion that the "feel" element of Plaintiff's asserted trade dress relates to visual impression rather than physical sensation and that inspection was therefore not considered necessary. (Dkt. 58, at pp. 6-7). Build-A-Bear reasonably disputed — and continues to dispute — that interpretation of Plaintiffs' asserted trade dress (and indeed the very existence of Plaintiffs' trade dress rights in the first instance).[2] Trade dress protection can encompass non-visual elements, such as texture, sound, and even scents. (Dkt. 57, at p. 4 of 36; *see also McCarthy*, § 8:7; 1 Trade Dress Protection § 26:11 (2d ed.) (discussing trade dress consisting of sounds, scents, and flavors)). Plaintiffs' own descriptions of its trade dress explicitly rely on and emphasize the importance of physical "feel":

> "short-pile ***velvety velour-like textured exterior*** with a ***light and silky memory foam-like stuffing*** providing an ***extremely soft and squeezable marshmallow feel***".

(Dkt. 25, First Am. Compl., Ex. 3, at p. 17) (emphasis added). Plaintiffs tout both the exterior fabric and interior stuffing to create its "*stretchy feel* and look" (*id.*, ¶45) (emphasis added), contrasted with polyester fill having "a *harder feel* and look when used as filling in toys." (*Id.*, ¶44) (emphasis added). By their own trade dress description and other allegations, Plaintiffs themselves have placed at issue the physical "feel" of their products.

This obvious reality is bolstered by the litigation positions repeatedly taken

---

[2] (*See, e.g.*, Dkt. 57, at p. 2 of 36 (discussing Build-A-Bear's declaratory judgment counterclaim relating to Plaintiffs' assertion of illusory rights through ever-shifting definitions of purported "unregistered trade dress rights in thousands of individually unique Squishmallows); Dkt. 56, at pp. 3 and 10 n.2 of 582 (same and further noting that Plaintiffs never even *attempted* to register the purported trade dress for these many products and thereby define for the public the true scope of any alleged rights)).

by Plaintiffs against their competitors over time (Dkt. 57, at p. 2 of 36 (citing Dkt. 37, ¶¶25(a)-(n))), including their case against Plaintiffs' direct competitor, Ty Inc., in which Plaintiffs' expert chastised Ty's expert for only using photographs of products, instead of inspecting actual products to assess trade dress. *See Kellytoy Worldwide, Inc., et al. v. Ty Inc., et al.*, Case No. 1:20-cv-00748 (N.D. Ill.), Dkt. 57-3 (emphasis added); *see also id.*, ¶19 ("[T]wo-dimensional images do not provide me the opportunity to test the physical aspects of the plush cited (something that is essential in evaluating plush products) . . .").

The Court acknowledged Plaintiffs' and their expert's positions about the importance of physical feel and found that "some degree of physical inspection would be appropriate here[.]" (Dkt 58, at p. 8). The fact that Plaintiffs have previously insisted on the importance of physical inspection, with this Court itself acknowledging some physical inspection is appropriate, demonstrates the genuine nature of this discovery dispute.[3]

---

[3] Although not part of the prior briefing, Build-A-Bear notes that Plaintiffs' own labeling of its Squishmallows products – *i.e.*, the public manner in which Plaintiffs advertise their trade dress to consumers and competitors – expressly asserts that "[t]he shape, look, feel, and texture of this Squishmallows™ branded plush toy constitutes proprietary trade dress":



**B.     The parties reasonably dispute the appropriate scope of an inspection of Plaintiffs' products.**

As noted by Build-A-Bear, the number of Squishmallows that Plaintiffs contend embody the trade dress has been and continues to be a moving target. Sometimes Plaintiffs have referred to the relevant product line as comprising "more than a thousand" products; other times they have identified 2,345 products in the line; and on other occasions they have suggested that there are 3,779 products at issue.[4] (Dkt. 57, at p. 2 n. 1 of 36).

Given the lack of clarity as to which of the thousands of unique products are at issue in this case and that photographs are (as Plaintiffs and their experts previously contended) inadequate to assess Plaintiffs' products for trade dress purposes, Build-A-Bear reasonably sought to inspect *all* of these uniquely different products to determine for itself which ones actually embodied the claimed trade dress elements. In other words, Build-A-Bear sought to require Plaintiffs to definitively define the scope of the their claims in this case, which Build-A-Bear understood was held by Judge Staton to be "certainly a permissible use of discovery," after denying Build-A-Bear's Motion to Dismiss based, in part, on its inability to understand what actually constitutes the claimed trade dress which Build-A-Bear is alleged to infringe.

---

The allegations in Plaintiffs' First Amended Complaint and the representations Plaintiffs have made millions of times on plush toys (and continue to make) in the marketplace to competitors and consumers simply cannot be reconciled with their latest, expedient litigation positions that "look and feel" is a term of art, (*see* Dkt. 58, at p. 7) and that the asserted trade dress' fifth element of "feel" no longer refers to actual physical feel but rather just a "feeling" (Dkt. 56, at p. 18 n.7 of 582).

[4] Plaintiffs now assert that this nearly 40% discrepancy in numbers arises from the presence of "several" duplicate pages in Appendix A. (*See* Ex. 1 hereto, Apr. 4, 2025 email from M. Hickey to A. Munoz). Plaintiffs' continued problems in clearly identifying which Squishmallows bear the claimed, unregistered trade dress further demonstrates the justification and need for Plaintiffs to produce all Squishmallows with the trade dress that Plaintiffs deliberately decided not to register with the Trademark Office and thereby define the exact scope of their asserted rights.

Build-A-Bear also reasonably contested the viability of any exemplar proposal. Because each Squishmallow product is a unique character, with its own unique feel, coloring, facial features, size, shape, long/short pile fabric, texture, appendages, or combination thereof, there is no possible way for a single Squishmallow to be "representative" or an "exemplar" of any other unique Squishmallow, as Build-A-Bear clearly articulated in its request to the Court. (Dkt. 57, at pp. 4–6 of 36). The Court opined that inspection of "a representative exemplar set of, say, 100 products" might achieve Build-A-Bear's ends, without providing any explanation or analysis regarding how 100 uniquely different products could be "representative" or "exemplify" the other thousands upon thousands of individually different products. Because of the distinct and unique differences in each and every Squishmallows product coupled with the legal requirement that Plaintiffs must establish that each and every product meets all five elements of its asserted unregistered trade dress, the only real and viable alternative was (and continues to be) physical inspection of each and every product.

### C. Build-A-Bear provided ample legal authority for its position.

Build-A-Bear's ample legal authority for its position also provides substantial justification. As detailed its briefing, the case law clearly supports Build-A-Bear's position that each and every product in a product line is required to contain the trade dress, (*see* Dkt. 56, Joint Stipulation, at pp. 4–5 of 582) (citing controlling law); (Dkt. 57, Build-A-Bear's Supp., at p. 5 of 36) (same), and that physical examination is appropriate in trade dress cases. *See, e.g.*, *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 543 n.5 (S.D.N.Y. 2003) (noting that the court conducted a "physical examination of [the] pants" at issue); *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 34-35 (S.D.N.Y.), *opinion adopted*, 271 F.R.D. 55 (S.D.N.Y. 2010) (finding spoliation where party failed to produce products in trade dress case)).

The Court's citation to and reliance on a patent infringement case for the

proposition that production of over 1,000 samples is overly burdensome and disproportionate is misplaced. In that case, it was recognized that the 1,150 test cups were "identical in all respects relevant to the patent litigation" and that "any differences in the products … would be irrelevant to the litigation, such as the brand associated with the test cup (*e.g.* CVS brand vs. Wal-Mart brand), and possibly the number of strips, orientation of strips or the type of drug for which the cup was testing." *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, No. 316CV0698CABNLS, 2017 WL 4391707, at *3 (S.D. Cal. Oct. 3, 2017). Here, the differences in each individual Squishmallows' own unique coloring, facial features, size, shape, long pile/short pile fabric, appendages, texture, and feel – all in the context of a trade dress case predicated on the "look and feel" of a particular physical product purportedly embodying unregistered trade dress – make all of these differences highly relevant to Plaintiffs' claim of trade dress existence and infringement. Build-A-Bear continues to maintain that inspection of each product in the line is required to confirm the manner and presence of the asserted trade dress features (which Plaintiffs' own expert ***insisted*** could not be adequately discovered through photographs), and that no single Squishmallow or set of Squishmallows can be "representative" or an "exemplar" of thousands of unique products.

Given its supporting case law and notwithstanding the Court's own citation to a patent case that Build-A-Bear respectfully submits is inapposite, Build-A-Bear was and remains under the reasonable belief that Plaintiffs' decision not to register its purported trade dress, and to define its product line in a manner which puts thousands of different products at issue in this case should not prejudice Build-A-Bear's defense and is a burden of Plaintiffs' own making.[5]

---

[5] As the Court recognized (Dkt. 58, at p. 6), this burden was not to be felt solely by Plaintiffs. True, Plaintiffs would be required to make available for inspection the products they put at issue in this case. But Build-A-Bear would actually need to inspect each and every product, which would take considerable time and effort to identify all of the differences in these unfamiliar products not made or sold by Build-A-Bear. This was not an instance of Build-A-Bear proposing some

**D.  Plaintiff's position and the Court's Order carry consequences that will follow as the case proceeds to disposition.**

The Court resolved this discovery dispute by ordering the parties to meet and confer in good faith to come up with a representative exemplar set of Squishmallows to produce for physical inspection. The Court suggested that 100 products might be an appropriate number.[6] (Dkt. 58, at p. 9). However, the Court's Order carries with it significant implications in the case. For example, Plaintiffs have now successfully refused to produce the vast majority of their products for simple physical review and inspection. As such, Plaintiffs inherently should be limited to using only the selected exemplars at trial or for purposes of summary judgment. While the Court itself noted the potential consequences of its Order in recognizing its "reluctance to issue any orders in the context of this discovery dispute that may have the unintended effect of implicitly defining the scope of Plaintiffs' asserted trade dress," (*id.*, at p. 8), this necessarily must be one such consequence. An additional consequence, of course, is that, by definition, the characteristics of the exemplar set of products produced by Plaintiffs will be imputed to the balance of Plaintiffs' claimed line. Thus, should some or all of the exemplar products lack one or more of the asserted trade dress elements, so too would the line. After all, this is the path for which Plaintiffs successfully advocated.

For purposes of this matter, however, Build-A-Bear was substantially justified

---

asymmetrical burden to the detriment of Plaintiffs; it was the opposite, and is an unfortunate but necessary byproduct of the highly unusual, amorphous and unprecedented nature of Plaintiffs' trade dress claims in this case.

[6] Whereas the Court's Order contemplated a set of perhaps 100 exemplars, Plaintiffs put forward a written exemplar proposal on April 1 subject to multiple caveats – 1 Squishmallow with the claimed trade dress in each of the brand's 11 different sizes, or 11 Squishmallows with the claimed trade dress, each in a different size. (*See* Ex. 2, April 1, 2025 Email from B. Bui to M. Hickey). Build-A-Bear respectfully does not see how any exemplar set could ever be representative of the thousands of unique Squishmallows in the product line, each of which must bear all five elements of the claimed, unregistered trade dress. Nonetheless, Build-A-Bear will continue to meet and confer with Plaintiffs on this issue per the Court's Order.

in seeking fulsome discovery of the very products that have given rise to Plaintiffs' claims of infringement of unregistered trade dress rights. Indeed, it is difficult to imagine how Plaintiffs could establish the most basic element of their claims at summary judgment and trial – namely, that thousands of uniquely different products have a single trade dress comprised of five different elements across an entire line of thousands and thousands of unique products – without producing those physical products in discovery, no less.

## CONCLUSION

For the foregoing reasons, Build-A-Bear respectfully requests that the Court recognize that Build-A-Bear's request for inspection of all of Plaintiffs' Squishmallows products was substantially justified, and therefore decline to award any costs or attorneys' fees to Plaintiffs.

DATED: April 8, 2025

**LEWIS RICE LLC**

By: */s/ Michael J. Hickey*

Michael J. Hickey, *Pro Hac Vice*

**KEESAL, YOUNG & LOGAN**
Ben Suter

*Attorneys for Defendant/Counterclaim-Plaintiff Build-A-Bear Workshop, Inc.*